**Garry Michael McCAULEY,
Appellant–Respondent,**

v.

**Mary Elaine (Iliff) McCAULEY,
Appellee–Petitioner.**

No. 39A05–9611–CV–476.

Court of Appeals of Indiana.

May 2, 1997.

Transfer Denied Aug. 15, 1997.

Heidi Kendall–Sage, Eckert Alcorn & Goering, Madison, for Appellant–Respondent.

Samuel T. Green, Jeffersonville, for Appellee–Petitioner.

---

## OPINION

BARTEAU, Judge.

Michael McCauley (Mike) appeals the trial court's order denying him visitation with his son and establishing a support arrearage. Four issues are raised, restated and consolidated as:

1. Whether the trial court abused its discretion when it terminated visitation between Mike and his son?

2. Whether the trial court erred in calculating the support arrearage?

3. Whether the trial court erred in not allowing Mike a 10% deduction from his child support for exercising regular visitation?

### FACTS

The marriage of Mike and Mary Iliff McCauley (Mary) was dissolved on April 26, 1994. One child was born of the marriage, J.M., born June 7, 1983. At the time of the dissolution, Mary was awarded custody of J.M. and Mike was given supervised visitation for six hours every other weekend. The trial court made the following findings in support of its decision to order supervised visitation:

15. The Respondent has been diagnosed as having a bipolar disorder which can result in serious mood swings. During one episode he made threats of doing harm to the petitioner and her father. There is no credible evidence of any threats by the respondent toward his son. This condition can be brought under control by medication, and he is presently being treated for this illness.

16. Because of the instability that Mike has exhibited in the past, the Court believes visitation with his son should be limited to supervised visitation for the present. Since he has not had any visitation for some time, the following schedule should be used:

a. Saturday, May 7 and May 21, 1994 from 2 p.m. to 4 p.m.

b. Saturdays, June 4, June 18 and July 2, 1994 from noon to 4 p.m.

c. Every other Saturday thereafter from noon to 6 p.m.

If Mike's work schedule makes him unavailable for visitation on any of these dates, the nearest Saturday or Sunday he is available should be substituted for the visitation date. Supervision should be away from the petitioner and her family and should be supervised by an adult agreed to by the parties. In the event the parties are unable to agree on a supervisory adult, the Respondent should submit to the Court for approval the name of a person willing to so supervise this visitation. Exchange of the child should take place at a place away from the home of either party at a place agreed to by the parties. In the event of a disagreement on a place to make said exchange, it should be done at the McDonald's Restaurant in Madison, Indiana.

R. 22–23.

In May of 1995, Mike filed a petition to modify visitation asking that visitation no longer be supervised. Mike's petition was heard on July 10, 1996. At that time the court also heard Mike's petition for modification of child support and petition for contempt filed in relation to visitation problems and Mary's petition for contempt alleging Mike was in arrears on his child support. On July 25, 1996, the court issued its final Order in which it terminated Mike's visitation with J.M., ordered a support reduction, and established a child support arrearage of $3111.00.

### TERMINATION OF VISITATION

■ Mike contends that it was an abuse of the trial court's discretion to deny visitation. In support of this contention, Mike alleges that the court's decision was based on events that occurred prior to the dissolution of the marriage and that the court's decision is not supported by the evidence.

■ In reviewing a trial court's determination of custody and visitation rights, this court will reverse only upon a showing of manifest abuse of the trial court's discretion and such abuse will not be found unless the trial court's decision is clearly against the

logic and effect of the facts and circumstances before the court. *K.B. v. S.B.*, 415 N.E.2d 749, 755 (Ind.Ct.App.1981). We will not weigh conflicting evidence or judge the credibility of witnesses, for these are matters particularly within the trial court's province. *Smith v. Dawson*, 431 N.E.2d 850, 851 (Ind. Ct.App.1982).

It has been recognized that the right of non-custodial parents to visit with their children is a "sacred and precious privilege." *Stewart v. Stewart*, 521 N.E.2d 956, 960 (Ind. Ct.App.1988), *trans. denied.* In Indiana, a non-custodial parent's right to visitation is statutorily protected:

> (a) A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation by the parent might endanger the child's physical health or significantly impair his emotional development.
>
> (b) The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation might endanger the child's physical health or significantly impair his emotional development....

Ind.Code § 31–1–11.5–24(a), (b).

The trial court concluded that visitation between Mike and J.M. would endanger J.M.'s physical health and significantly impair his emotional development. The only finding by the trial court in support of this conclusion is:

> III. The child has an emotional problem and he receives regular counseling for it. The problem came about because of some of the things his father did before, during and after the divorce. Even though the son still loves his father, he is not ready to establish visitation yet. It will take more time and counseling to heal things.

R. 112.

■ The burden of proof rests on the party seeking termination to establish that the visitation endangers [1] the child's physical health or significantly impairs his emotional development. *Stewart*, 521 N.E.2d at 963. After reviewing the evidence presented to the trial court, we must agree with Mike that there was no evidence presented to support the trial court's determination that continued supervised visitation between Mike and J.M. would endanger J.M.'s physical health or significantly impair his emotional development. The only evidence presented by Mary on the issue of visitation was her own testimony and that of James Wortham, J.M.'s mental health therapist. While Wortham testified that J.M. had related his fear of his father and several instances of physical violence inflicted on J.M. by Mike, Wortham did not establish a time frame for the alleged violence. In fact, from Wortham's testimony it is obvious that most if not all of the alleged inappropriate acts must have occurred prior to Mike and Mary's divorce. Mary's testimony provided no additional insight. Thus, the court had before it no evidence that was clearly since the date of the divorce that Mike posed a threat of any kind to either J.M.'s physical or emotional health. Given this and the fact that all visitation after the divorce was supervised, with no reported problems, the conclusion that continued visitation would endanger J.M. is not supported by the evidence.

■ The trial court did conduct an *in camera* interview with J.M., and we might speculate from the language of the trial court's finding that his decision was based upon that *in camera* discussion. However, the trial court's judgment may not rest primarily upon the results of a private *in camera* interview. *Simons v. Simons*, 566 N.E.2d 551, 556 (Ind.Ct.App.1991); *Truden v. Jacquay*, 480 N.E.2d 974, 979 (Ind.Ct.App. 1985). Because there was no evidence of record supporting the trial court's decision terminating visitation, the ruling was an abuse of discretion and must be reversed.

## CHILD SUPPORT ARREARAGE

■ Mike contends that the trial court erred in calculating the support arrearage.

1. In *Stewart*, the majority opinion determined that even though the word "might" was used, the statute should be read to require proof that visitation "would" endanger or impair the physical or mental health of the child. 521 N.E.2d at 960 n. 3.

We. agree. In early September, 1995, Mary and Mike entered into a compromise agreement dealing with the judgment lien Mary had on Mike's house and the child support arrearage. Mary accepted a $7500 payment in satisfaction of both balances. In Mary's Affidavit For Rule To Show Cause, she stated in part:

> 3. That in early September 1995, the parties entered into a compromise/settlement of child support arrearage and the Respondent's arrearage of his support obligation was settled and paid up-to-date for the arrearage that had accrued as of September 6, 1995.

R. 66. The trial court calculated Mike's support arrearage from May 9, 1995. On remand, the trial court should recalculate the support arrearage from September 6, 1995.[2]

## REDUCTION FOR REGULAR VISITATION

■ Mike contends that the trial court erred in not allowing him a 10% deduction for regular visitation. Because the trial court denied Mike any visitation with J.M.,

Mike would not have been entitled to a reduction in support for regular visitation. A reduction in support for future regular visitation is within the trial court's discretion. It should be noted that the 10% reduction is calculated on the basis of the non-custodial parent exercising guidelines visitation, i.e., bearing the costs associated with child rearing two days of every fourteen days, or 14.3% of the time. Child Supp. G. 6, Deviation From Guideline Amount for Regular Visitation. Depending on the amount of time and frequency of a non-custodial parent's visitation, the reduction percentage may vary.

Reversed and remanded for recalculation of the child support arrearage and reinstatement of visitation.

RUCKER and BAKER, JJ., concur.

2. Mary contends that because the court did not approve the agreement, it is not binding, citing authority holding that modifications of child support must be approved by the court to be binding. *In re Marriage of Johnson*, 625 N.E.2d 1331, 1332 (Ind.Ct.App.1993). This was not a modification of the amount of child support Mike was obligated to pay on a weekly basis. It was instead a settlement encompassing all of the debts Mike owed Mary. We know of no authority prohibiting a reduction in the total amount of outstanding obligations in exchange for a lump sum payment.