**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KATHLEEN M. MEEK**
Bowen & Associates, LLC.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**KATHERINE A. HARMON**
**JARED S. SUNDAY**
Mallor Grodner LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| R.C., | ) | |
| | ) | |
| Apellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1308-DR-425 |
| | ) | |
| J.Q | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Christopher Haile, Magistrate
Cause No. 49D06-1201-DR-853

**May 29, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

R.C. ("Father") appeals from the Marion Superior Court's order granting J.Q.'s ("Mother") petition to modify custody, child support, and parenting time. Father raises five issues, which we consolidate and restate as the following four:

I. Whether the trial court abused its discretion when it denied Father's motion to continue the final hearing;

II. Whether the trial court abused its discretion when it allowed a witness to rely on documents not admitted into evidence during her testimony;

III. Whether the trial court's child support order is not supported by the evidence; and,

IV. Whether the trial court erred by failing to make required findings to support its decision to restrict Father's parenting time to two supervised hours per week.

We affirm in part and remand in part for proceedings consistent with this opinion.

**Facts and Procedural History**

During their marriage, the parties had two children: J.C., born in November 2008, and G.C., born in May 2010. Mother and Father met in the military. Father served in the Army from 2006 to 2011, which service included a tour of duty in Iraq. Father was honorably discharged. Father is disabled as a result of his military service. Mother serves in the National Guard and is employed by Amazon.

The parties' marriage was dissolved by a Texas court in December 2010. The court awarded Mother and Father joint legal and physical custody of the children, and neither party was ordered to pay child support.

By mutual agreement, the parties did not comply with the custody arrangement established in the Texas dissolution decree. Mother, who had returned to Indiana, had physical custody of the children from December 2010 to August 2011. Because Mother

2

had to attend military training in August 2011, she arranged for Father, who had settled in New York, to have physical custody of the children.

Mother attempted to regain custody of the children shortly thereafter but could not establish Father's whereabouts. However, Mother did have Father's phone number during this time and was able to speak to the children. Mother was informed of Father's address during Thanksgiving 2011, and regained physical custody of the children on December 28, 2011. At that time, the children looked tired and had poor hygiene.

Mother took J.C. to Riley Hospital the next day because she believed that J.C. had been sexually abused. Medical professionals at Riley found no evidence of sexual abuse. However, J.C.'s "vaginal area was likely irritated due to poor hygiene." Ex. Vol., Petitioner's Ex. 2. Mother also contacted Child Protective Services, but they declined to investigate because Father is a resident of New York.

Mother then sought treatment for herself and the children with Anny Maslowski, a licensed mental health counselor. Mother expressed concern that J.C. was displaying sexualized behavior upon return from her Father's home in December 2011. Maslowski observed that J.C. "appears to show genuine fear" when she is asked about Father. Ex. Vol., Petitioner's Ex. 1. Maslowski never observed J.C. engaging in sexualized behaviors, but based on Mother's and maternal grandmother's description, believed that J.C. was "either exposed to explicit material" or saw "adults engaging in sexual acts." Tr. pp. 15-16. Maslowski recommended that the children remain in Mother's physical custody and have only limited, supervised contact with Father. Tr. p. 13. Maslowski also

believes that Mother is experiencing symptoms of post-traumatic stress disorder and depression resulting from abuse that Mother suffered during her marriage to Father.

On January 9, 2012, Mother filed in Marion Superior Court a Petition to Modify a Foreign Decree and to Modify Custody, Child Support and Parenting Time. Thereafter, the trial court issued a temporary order awarding Mother sole custody of the children, ordering Father to pay $70 per week in child support, and limiting Father's parenting time to supervised time in Indiana. The court also ordered the parties to be evaluated by the Domestic Relations Counseling Bureau ("DRCB").

Robin Pannell ("Pannell"), the evaluator from the DRCB, interviewed Mother, maternal grandmother, Father, and Father's girlfriend. Mother reported to Pannell that Father emotionally and physically abused her during their marriage. She also stated that Father yells at and physically abuses the children. Mother alleged that while the children were in Father's custody from August to December 2011, he did not take them to the doctor and refused to give them their prescribed asthma medication.

Father alleged that Mother abused alcohol during their marriage and was physically and verbally abusive to Father. He told Pannell that Mother frequently threatened to harm herself. Father also claims that Mother physically abused the children. Father denied abusing the children but stated that he disciplines them by spanking them. Father also stated that Mother knew where the children were at all times when they were in his custody in 2011. He alleged that Mother did not provide any medication or medical information for the girls while they were in his care, and he does not believe that they have asthma. Father's girlfriend, with whom he lives, told Pannell that both Mother

4

and Father were good parents.  Pannell asked both parents to complete a drug screen. Mother did not test positive for any illegal substances.  Father failed to complete the drug screen.

Pannell also spoke to J.C.'s teacher at Hope Baptist Daycare.  J.C. attended the daycare from January to March 2012.  Her teacher had no concerns of abuse or neglect, and never witnessed any sexualized behavior.

In the evaluation, Pannell expressed concern that Mother agreed to allow Father to have custody of the girls from August to December 2011.  In addition, Pannell stated, "the extensive detailed accounts of [J.C.'s] statements and behavior by the maternal grandmother and by [Mother] are cause for alarm regarding [the children] being in [Father's] unsupervised care.  However it is questionable why [Mother] said that [J.C.] behaved inappropriately while she was in preschool and the preschool director did not corroborate this statement."  Ex. Vol. Petitioner's Ex. 2.  However, she expressed concern that "at the very least, the girls have been exposed to mistreatment and have observed adult sexual behavior."  Id.  She also observed that Father's girlfriend "contradicted many of the negative statements [Father] made about [Mother]," and Mother's behavior "is common to women who have been abused."  Id.  Pannell recommended that Mother have sole custody of the children and Father not have any parenting time until J.C. "has participated in counseling with a qualified therapist to assess whether physical or sexual abuse occurred, and the counselor deems unsupervised contact to be appropriate."  Id.

5

Prior to the final hearing, Father filed a motion to modify child support and parenting time. The trial court denied Father's request for unsupervised parenting time and ordered supervised parenting time to occur at Kids Voice in Indianapolis as was previously ordered. The trial court declined to rule on the motion to modify child support until after the final hearing.

The final hearing was held on June 17, 2013. Father's counsel withdrew her appearance approximately two months before the final hearing, and Father proceeded pro se. Father admitted that he had not made any attempt to schedule supervised parenting time through Kids Voice. Tr. p. 85. He stated that seeing his children for only one hour would be heartbreaking and would worsen his symptoms of depression. Tr. p. 110.

On June 21, 2013, the trial court issued an order awarding sole custody of the children to Mother and ordering Father to pay $135 per week in child support. Father was also ordered to pay an additional $5 per week toward the $1346 arrearage from the temporary child support order. The trial court also ordered that Father "shall have supervised parenting time in the State of Indiana up to two hours per week either through the Kids Voice Agency or a mutually agreed adult supervisor." Appellant's App. p. 155. Father was also permitted weekly telephone and/or Skype contact "as previously agreed by the parties." Id.

Father timely filed a motion to correct error and motion to reconsider. Father argued, in part, that it is impossible for him to exercise supervised parenting time in Indiana two hours per week because he lives in New York and has limited financial resources. Father also argued that the trial court erred when it deviated from the

6

Parenting Time Guidelines without the required accompanying written explanation. Father's motions were denied on August 6, 2013. Father now appeals. Additional facts will be provided as necessary.

## I. Continuance

After the final hearing had begun and three witnesses had testified, Father requested a continuance. Father stated that he had hired new counsel, but counsel had not received notice of the hearing. Father argues the trial court abused its discretion when it denied his motion for a continuance.

Pursuant to Indiana Trial Rule 53.5, "trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause established by affidavit or other evidence." "A trial court's decision to grant or deny a motion to continue a trial date is reviewed for an abuse of discretion, and there is a strong presumption the trial court properly exercised its discretion." Gunashekar v. Grose, 915 N.E.2d 953, 955 (Ind. 2009). "A denial of a motion for continuance is abuse of discretion only if the movant demonstrates good cause for granting it." Id.

The trial court denied Father's motion to continue because no attorney had entered an appearance on Father's behalf, and he made his motion two hours into the hearing. Tr. p. 82. Moreover, the court noted that Father's two prior attorneys had withdrawn their respective appearances from the case. Father's second attorney withdrew her appearance nearly two months prior to the final hearing. At the start of the final hearing, the trial court asked Father if he was ready to proceed and he replied that he was. Tr. p. 4. Father never claimed that he had hired another attorney until he asked for a continuance after

7

Mother had presented testimony from three witnesses. Under these facts and circumstances, we cannot conclude that the trial court abused its discretion when it denied Father's request to continue the final hearing.

## II. Therapist's Testimony

Father argues that the trial court abused its discretion when it allowed Anny Maslowski to refer to her notes and case file during her testimony. Evidence Rule 612 provides:

> If, while testifying, a witness uses a writing or object to refresh the witness's memory, an adverse party is entitled to have the writing or object produced at the trial, hearing, or deposition in which the witness is testifying.

Father argues that he "did not have an opportunity to examine either the notes or the case file." Appellant's Br. at 20.

However, Father failed to object to Maslowski's use of her case file to refresh her recollection, and he did not request the opportunity to examine the case file. He has therefore waived this issue. See Marsh v. State, 818 N.E.2d 143, 145 (Ind. Ct. App. 2004). We also observe that Father's objection and issue on appeal concerns the extremely limited use Maslowksi made of the file to determine the date she first began seeing J.C. Id. (citing Tr. pp. 9-10).

## III. Child Support

Father also argues that the trial court "erred by failing to provide any findings concerning child support, or by including a child support worksheet, thus making it impossible for Father to verify whether the Court's child support order was in compliance

8

with the child support guidelines." Appellant's Br. at 25. Father failed to submit his own child support worksheet; therefore, he has waived his right to appeal the trial court's child support order. Butterfield v. Constantine, 864 N.E.2d 414, 417 (Ind. Ct. App. 2007).

Mother submitted a child support worksheet, and Father's income, as reflected on that worksheet is substantially the same as the income Father admitted to at the final hearing. Appellant's App. p. 169; Tr. p. 106. Mother submitted an additional exhibit establishing Father's weekly child support obligation after taking into account the monthly income the children receive from Father's Social Security disability payments. Id. at 170. Mother's exhibits establish a weekly child support obligation of $135 per week, which is the amount the trial court ordered Father to pay. Although the trial court did not include a child support worksheet with its order, the calculation of Father's child support obligation is supported by the evidence.

## IV. Parenting Time

Finally, we address Father's argument that the trial court erred when it restricted Father's parenting time to two hours of supervised parenting time per week without entering findings of fact to support its decision. We review and will reverse a trial court's determination of a parenting time issue only for an abuse of discretion. Shady v. Shady, 858 N.E.2d 128, 143 (Ind. Ct. App. 2006), trans. denied. On appeal, we will not reweigh the evidence or judge witness credibility. Id. "In all parenting time controversies, courts are required to give foremost consideration to the best interests of the child." Id.

"The right of non-custodial parents to visit with their children is a 'sacred and precious privilege.'" Appolon v. Faught, 796 N.E.2d 297, 300 (Ind. Ct. App. 2003) (quoting McCauley v. McCauley, 678 N.E.2d 1290, 1292 (Ind. Ct. App. 1997), trans. denied). "Ideally, a child should have a well-founded relationship with each parent." Id. For this reason,

> [e]xtraordinary circumstances must exist to deny parenting time to a parent, which necessarily denies the same to the child. If the trial court finds such extraordinary circumstances do exist, then the trial court shall make specific findings regarding its conclusion that parenting time would endanger the child's physical health or significantly impair the child's emotional development.

Perkinson v. Perkinson, 989 N.E.2d 758, 765 (Ind. 2013).

Our supreme court's holding in Perkinson tracks the language of Indiana Code section 31-17-4-1, which provides that "[a] parent not granted custody of the child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development." Moreover, a party who seeks to restrict a parent's visitation rights bears the burden of proving by a preponderance of the evidence a justification for such a restriction. Hatmaker v. Hatmaker, 998 N.E.2d 758, 761 (Ind. Ct. App. 2013).

In Hatmaker, the child's father was convicted of battering the mother. In the dissolution decree, the father was awarded only supervised parenting time with the parties' child. After the father completed domestic violence counseling and parenting classes, he requested unsupervised parenting time. At a hearing on the father's motion,

10

the mother testified that she was afraid of father, he had obtained her address and sent her letters, and she feared father was responsible for leaving a decapitated rabbit on her doorstep. The trial court denied the father's request without entering any factual findings that would support a conclusion that parenting time would endanger the child's health or significantly impair the child's emotional development. The court also stated that parenting time could be modified upon agreement of the parties.

Father appealed and our court concluded that the order for supervised parenting time, which could be modified by agreement of the parties, was contrary to law. Id. at 763 Specifically, we held:

> The trial court made no finding of endangerment. Indeed, the trial court implicitly found that parenting time modification presented no likely danger to R.H. as the order provides for modification "upon agreement of the parties at any time." In essence, the order confers upon Mother the prerogative to enforce the supervision restriction at her discretion. The order is erroneous, as it is internally inconsistent and in contravention of statutory authority. Accordingly, we reverse the order denying Father parental access except when supervised or upon agreement of Mother. We remand with instructions to the trial court to either enter an order containing sufficient findings to support a parenting time restriction or enter an order that does not contain such a restriction.

Id. at 762 (record citation omitted). See also Walker v. Nelson, 911 N.E.2d 124, 130 (Ind. Ct. App. 2009) (stating that the trial court is statutorily required to make a specific finding 'of physical endangerment or emotional impairment prior to placing a restriction on the noncustodial parent's visitation'") (citation omitted); In re Paternity of V.A.M.C., 768 N.E.2d 990, 1001-02 (Ind. Ct. App. 2002).

Here, the court restricted Father's parenting time to two hours of supervised time per week in Indiana through the Kids Voice Agency or a "mutually agreed adult

11

supervisor." Appellant's App. p. 155. Father's ability to exercise two hours of supervised time per week is limited by the significant distance between Indianapolis and his home in Oswego, New York. The trial court severely restricted Father's parenting time without making the specific and required statutory findings. Although there is evidence in the record that might support a finding of physical endangerment or emotional impairment sufficient to restrict Father's parenting time, such a serious restriction must be made pursuant to a finding that such parenting time would physically endanger or emotionally impair J.C. and/or G.C.

For these reasons, we remand to the trial court with instructions to either: (1) enter an order containing findings sufficient to support a parenting time restriction under Indiana Code section 31–17–4–2 or (2) enter an order without the restriction. See Walker, 911 N.E.2d at 130; see also D.B. v. M.B.V., 913 N.E.2d 1271, 1275 (Ind. Ct. App. 2009) (stating "on remand, should the trial court restrict Father's parenting time upon entry of the requisite statutory finding of endangerment, we encourage the trial court to order that the parenting time be supervised.").[1]

**Conclusion**

We affirm the trial court's denial of Father's motion to continue the final hearing and conclude that Father waived his claim of error under Evidence Rule 612. Moreover, the trial court's child support order is supported by the evidence. However, we remand

---

[1] Because we find it necessary to remand this case on the issue of Father's parenting time, we decline to address his argument that Mother failed to present sufficient evidence to establish that Father's exercise of parenting time with the children would endanger their physical health or impair their emotional development.

12

this case to the trial court with instructions to issue an order containing findings sufficient to support its decision to restrict Father's parenting time or enter a new order without the restriction.

Affirmed in part and remanded in part.

FRIEDLANDER, J., and PYLE, J., concur.