**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JESSICA GROVES**
Groves & Groves
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**REGINALD T. BADEAUX IV**
Badeaux Dean-Webster LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GLENN HATMAKER, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1402-DR-56 |
| | ) | |
| BETTY HATMAKER, | ) | |
| | ) | |
| Appellees-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David J. Dreyer, Judge
Cause No. 45D10-1002-DR-6242

**July 21, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Glenn Hatmaker ("Father") appeals the Marion Superior Court's order restricting his parenting time with his minor child to supervised parenting time two hours per week.

We affirm.

**Facts and Procedural History**

This is the second appeal addressing the restrictions imposed on Father's parenting time with minor child, R.H. Facts pertinent to this appeal were discussed in Hatmaker v. Hatmaker, 998 N.E.2d 758 (Ind. Ct. App. 2013) ("Hatmaker I") and are recited below.

> Father and Mother were married in 2003 and separated in February of 2010. Father was convicted of committing battery upon Mother and, on November 21, 2011, the parties were divorced. At that time, Father was awarded only supervised visitation with the sole child of the marriage, R.H., contingent upon the completion of domestic violence counseling.
>
> Father, who was receiving unemployment compensation of $390 per week, was ordered to pay child support of $85 per week. At that time, Mother was earning $388.60 per week and incurring child care expenses.
>
> Father completed domestic violence counseling and parenting classes. He also submitted to a mental health evaluation but "no mental health care was recommended." Accordingly, Father was eligible for alternative misdemeanor sentencing. He also exercised parenting time with R.H. under the supervision of Kid's Voice.
>
> On January 8, 2013, Father filed a motion requesting unsupervised parenting time, alleging that Kid's Voice "no longer had time available," that R.H. was suffering from parental alienation syndrome, and that an order for supervision premised upon Indiana Code section 31-14-14-5 (providing for a presumption of supervision in some domestic violence cases) was not valid more than two years after the crime. He also averred that his income had decreased by more than 20% since the entry of the existing child support order, and requested a reduction in his obligation.
>
> On February 19, 2013, a hearing was conducted at which both parties testified. Father testified that he worked two days per week at a law firm and typically saw R.H. only about two hours per month because the supervision fees were unaffordable. Mother testified that she was afraid of Father, that he had obtained her address and sent letters, and also visited R.H.'s school and questioned the principal about R.H.'s enrollment. On the same day as the school visit, Mother had called police and an officer had

discovered a decapitated rabbit on Mother's doorstep. Mother suspected Father as the source.

Id. at 760 (record citations omitted). The court issued an order denying Father's motion for unsupervised parenting time without issuing accompanying findings of fact to support the continued restriction.

Father appealed the trial court's order restricting his parenting time to two supervised hours per week. In Hatmaker I, we reversed the trial court's order, in part, because the trial court failed to find that parenting time might endanger R.H.'s physical health or impair her emotional development. Id. at 762. We therefore remanded the case "with instructions to the trial court to either enter an order containing sufficient findings to support a parenting time restriction or enter an order that does not contain such a restriction." Id.

Pursuant to our court's instructions in Hatmaker I, on December 10, 2013, the trial court issued the following findings of fact:

1. Father has a history of anger management issues resulting in physical violence upon 3 other people in addition to Mother in 2010;

2. Father completed domestic violence counseling, a parenting class and a mental health evaluation as condition[s] of his October, 2010 D Felony Battery conviction (due to domestic violence upon Mother in their child's presence) and alternative misdemeanor sentencing; since obtained;

3. Due to Father's continued actions, Mrs. Hatmaker continues to be afraid of Mr. Hatmaker with continued concern for the safety of the Parties' daughter;

4. Father utilized Mother's social security number and date of birth without her knowledge or permission to secretly obtain the kind of vehicle Mother drove;

3

5. Father utilized Mother's social security number and date of birth without her knowledge or permission to secretly obtain Mother's new address;

6. Father admits he utilized Mother's personal identifying information;

7. Mother testified Father was stalking her;

8. Mother received mail from Father addressed to their daughter at a time when he wasn't to know her address and Father had supervised parenting time solely;

9. Father's letter told Mother for the first time that Father knew where she lived which made her extremely scared;

10. Father admits he sent letters addressed to their 7 year old daughter;

11. On August 21, 2012, Mr. Hatmaker had appeared at their daughter's school;

12. Father was under Order for supervised parenting time only;

13. Father testified he was not attempting to see their daughter by appearing at her school;

14. Their daughter's school is 2, maybe 3 miles from Mother's home.

15. On August 21, 2012, police found a decapitated rabbit placed on Mother's front door;

16. Mother is confident Father decapitated the rabbit and placed it at her door;

17. Mother fears physical harm to their daughter in Father's unsupervised care and points to Father's numerous pleadings since the November 21, 2011 Order of Dissolution as examples of lewd, untruthful, angry allegations against Mother explaining Father would undoubtedly harm their daughter in vindictiveness against Mother;

18. Father testified he submitted to a mental health evaluation [in 2010] but "no mental health care was recommended";

19. Father has not obtained psychological counseling since the divorce;

20. Mother fears emotional harm to their daughter in Father's unsupervised care believing Father would tell their 7 year old daughter lewd, untruthful allegations depicted in his pleadings as revenge upon Mother;

21. During Father's supervised parenting time at Kid's Voice he has been repeatedly admonished not to ask their daughter questions about where Mother lives, who's there, and things about Mother;

22. The Parties' daughter is unusually quiet going to supervised parenting time at Kid's Voice;

23. The Parties' daughter is not afraid of the Kid's Voice facility;

24. The Parties' daughter is not afraid of the Kid's Voice supervisor;

25. The Parties' daughter has expressed fear of her Father;

26. Father persists in calling their daughter by a nickname the daughter has repeatedly asked him not to call her;

27. The Court finds that it is more probable than not Father placed the decapitated rabbit at Mother's door August 21, 2012 where the Parties' daughter could have seen it; attempted direct contact with the daughter by appearing at her school and sending letters when ordered supervised parenting time only, and improperly utilized Mother's personal identifying information to discover her vehicle and address whereby pursuant to Indiana Code [section] 31-17-4-2, placing the parties' daughter in Father, Glenn Hatmaker's unsupervised care would endanger daughter's physical health and emotional development[.]

Appellant's App. pp. 21-24. The trial court then restricted Father's parenting time to two hours per week at Kid's Voice "for the physical and emotional safety of [R.H.] due to Father's actions [set forth in paragraph 27 above] since the Parties' Dissolution of Marriage was granted." Id. at 24.

Father filed a motion to correct error, which was deemed denied by operation of Trial Rule 53.3. Father now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

"The right of non-custodial parents to visit with their children is a 'sacred and precious privilege.'" Appolon v. Faught, 796 N.E.2d 297, 300 (Ind. Ct. App. 2003) (quoting McCauley v. McCauley, 678 N.E.2d 1290, 1292 (Ind. Ct. App. 1997), trans. denied). "Ideally, a child should have a well-founded relationship with each parent." Id. For this reason,

5

[e]xtraordinary circumstances must exist to deny parenting time to a parent, which necessarily denies the same to the child. If the trial court finds such extraordinary circumstances do exist, then the trial court shall make specific findings regarding its conclusion that parenting time would endanger the child's physical health or significantly impair the child's emotional development.

Perkinson v. Perkinson, 989 N.E.2d 758, 765 (Ind. 2013).

Our supreme court's holding in Perkinson tracks the language of Indiana Code section 31-17-4-1, which provides that "[a] parent not granted custody of the child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development." Moreover, a party who seeks to restrict a parent's visitation rights bears the burden of proving by a preponderance of the evidence a justification for such a restriction. Hatmaker v. Hatmaker, 998 N.E.2d 758, 761 (Ind. Ct. App. 2013). "In all parenting time controversies, courts are required to give foremost consideration to the best interests of the child." Shady v. Shady, 858 N.E.2d 128, 143 (Ind. Ct. App. 2006), trans. denied. Finally, we review and will reverse a trial court's determination of a parenting time issue only for an abuse of discretion. Id.

A. *Sufficient Findings to Support the Judgment*

In Hatmaker I, we reversed the trial court's parenting time order and remanded with instructions to the trial court to either enter an order containing sufficient findings to support a parenting time restriction or enter an order that did not contain such a restriction. 998 N.E.2d at 762 (record citation omitted). See also Walker v. Nelson, 911 N.E.2d 124, 130 (Ind. Ct. App. 2009) (stating that the trial court is statutorily required to

6

make a specific finding "of physical endangerment or emotional impairment prior to placing a restriction on the noncustodial parent's visitation") (citation omitted).

Father argues that the trial court did not follow our Court's instructions on remand because the trial court's findings are not sufficient to support the continued restriction of his parenting time. Father claims the trial court's findings establish only the possibility that Father's actions might endanger Mother's physical or emotional well-being, and the findings do not establish that allowing Father to have unsupervised parenting time would endanger R.H.'s physical health or mental well-being.

Although many of the trial court's findings of fact concern Father's acts toward Mother, Father's actions as discussed in those findings demonstrate Father's emotional instability and anger issues. It is particularly troubling that Father left a decapitated rabbit on Mother's doorstep, which is not only a threat to Mother, but demonstrates Father's disregard for R.H.'s emotional well-being if she had seen the rabbit. Father has also attempted to circumvent the supervised parenting time restriction by sending letters to R.H. and through unsolicited appearances at her school. And Father questioned R.H. during their supervised time in an attempt to obtain information about Mother's activities and whereabouts despite repeated admonishments by the visitation supervisor. For these reasons, we conclude that the trial court's findings are sufficient to support its conclusion that allowing Father to exercise unsupervised parenting time might endanger R.H.'s physical health or significantly impair her emotional development.

B. *Sufficient Evidence to Support the Findings*

Father also argues that the evidence is insufficient to support the trial court's findings of fact. However, Father failed to file a transcript in this appeal. Father argues that he was not required to do so because the transcript was prepared and filed in the Hatmaker I proceedings and no new hearings were held.

We agree that Father was not required to request preparation of the transcript in his Notice of Appeal, as the transcript had previously been prepared and was made available to the parties. However, Father should have included the relevant portions of the transcript in his Appellant's Appendix, but failed to do so. "It is a cardinal rule of appellate review that the appellant bears the burden of showing reversible error by the record, as all presumptions are in favor of the trial court's judgment." Marion–Adams School Corp. v. Boone, 840 N.E.2d 462, 468 (Ind. Ct. App. 2006). "The party claiming the error has the burden to establish a complete and accurate record." Smith v. Convenience Store Distributing Co., 583 N.E.2d 735, 739 (Ind. 1992).

"Although not fatal to an appeal, failure to include a transcript works a waiver of any specifications of error which depend upon the evidence." In re Walker, 665 N.E.2d 586, 588 (Ind. 1996) (citation omitted). See also Fields v. Conforti, 868 N.E.2d 507, 511 (Ind. Ct. App. 2007) (stating that our court may address issues on appeal that do not challenge the sufficiency of the trial court's findings of fact, but any arguments that depend upon the evidence presented at trial are waived).

For all of these reasons, we conclude that Father has waived his argument that the trial court's findings are not supported by sufficient evidence.

8

## Conclusion

The trial court's findings are sufficient to support its decision to restrict Father's parenting time. And Father waived his argument that the trial court's findings are not supported by sufficient evidence by failing to provide our court with the relevant portions of the transcript.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.