## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Oct 16 2015, 7:09 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Jonathan M. Young | Robin R. Craig |
| Law Office of Jonathan M. Young, P.C. | Evansville, Indiana |
| Newburgh, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Marriage of: R.L.R-H., | October 16, 2015 |
| *Appellant-Respondent,* | Court of Appeals Case No. 82A01-1501-DR-31 |
| v. | Appeal from the Vanderburgh Superior Court |
| J.M.R., | The Honorable David O. Kelley, Special Judge |
| *Appellee-Petitioner* | Trial Court Cause No. 82D04-0712-DR-01169 |

**Bailey, Judge.**

# Case Summary

R.R. ("Mother") appeals an order permitting J.R. ("Father") to exercise parenting time with Jo.R. ("Child") and finding Mother in contempt of court. We affirm.

# Issues

Mother presents two issues for review:

I. Whether the trial court abused its discretion by allowing Father parenting time; and

II. Whether the trial court abused its discretion by finding Mother in contempt of court.

# Facts and Procedural History

Father and Mother separated in 2007, when Child was two years old. Father petitioned for dissolution of the marriage. An interim order provided that Father was to exercise parenting time with Child without overnight visits. After Mother filed an emergency petition for modification, the parties agreed that Father would exercise parenting time without his friend, J.F., present.

Initially, Father exercised parenting time in four-hour blocks. According to Father, he was followed, contacted by telephone, subjected to accusations, and "tormented" during the visits and child exchanges. (Tr. at 17.) On one occasion, Mother telephoned the police to allege that Father had "smacked"

her. (Tr. at 18.) When police responded, Father produced a recording of his interaction with Mother. The police declined to make an arrest.

[5] The visits continued, but Father began to bring another adult or a teenager with him on each visit. One such companion was B.R., the fourteen-year-old son of J.F.

[6] The parties were divorced in November of 2008. Two weeks later, Mother filed an emergency petition seeking the suspension of Father's parenting time. Mother alleged that B.R. had touched Child inappropriately and Father had failed to protect Child. The parties reached an agreement that Father's parenting time would take place in Evansville and not in the presence of B.R.

[7] Mother initiated a Child Protective Services investigation, which was closed with the accusation unsubstantiated. Neither Father nor B.R. was ever charged with a criminal act.

[8] Three months after filing the motion to suspend Father's parenting time, Mother filed a motion for restriction of his parenting time. In 2009, Father was twice permitted to exercise parenting time at the offices of Child's therapist. Thereafter, the therapist informed Father that she did not offer facilities for supervised parenting time. At this juncture, Father discontinued his attempts to exercise parenting time with Child.

[9] On September 29, 2010, the trial court entered an order distributing the marital property and providing: "Court is to be advised as to the progress on Child's counseling before modifying any visitation orders." (App. at 7.)

[10] On August 6, 2013, Father filed a petition to modify parenting time. He also requested that Mother be held in contempt of court for refusal to comply with the property division order. On April 25, 2014, the trial court conducted a hearing at which Father, Mother, and Child's therapist testified. Child's therapist testified that Child had experienced physical symptoms due to anxiety about seeing Father and had reported that Father "let people do bad things to [her]." (Tr. at 75.)

[11] On December 23, 2014, the trial court entered an order that Father have parenting time with Child on alternate weekends, preceded by six one-hour supervised visits at the Parenting Time Center. Although the weekend visits were to be unsupervised, the trial court cautioned: "for his own protection, the Father may elect to have any other responsible person present during his parenting time." (App. at 13.)

[12] Mother was found in contempt of court for failure to comply with the 2010 property division order. The trial court imposed a sixty-day sentence of incarceration, which Mother could avoid by surrendering to Father a shotgun that had belonged to his deceased father and by paying Father the market value of twenty-one items of personal property awarded to him. Mother was also ordered to pay $900.00 of Father's attorney's fees. Mother now appeals.

# Discussion and Decision

## *Parenting Time*

[13]    Mother contends that the trial court abused its discretion by allowing Father to exercise parenting time despite the recommendation of Child's therapist to the contrary.

[14]    "In all visitation controversies, courts are required to give foremost consideration to the best interests of the child." *Marlow v. Marlow*, 702 N.E.2d 733, 735 (Ind. Ct. App. 1998), *trans. denied*. We review parenting time decisions for an abuse of discretion. *Id.* A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Sexton v. Sedlak*, 946 N.E.2d 1177, 1183 (Ind. Ct. App. 2011), *trans. denied*.

[15]    "The right of non-custodial parents to visit with their children is a '"sacred and precious privilege."'" *Appolon v. Faught*, 796 N.E.2d 297, 300 (Ind. Ct. App. 2003) (quoting *McCauley v. McCauley*, 678 N.E.2d 1290, 1292 (Ind. Ct. App. 1997), *trans. denied*). "Ideally, a child should have a well-founded relationship with each parent." *Id.* Accordingly, Indiana Code section 31-17-4-2 provides:

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

[16] Even though the statute uses the word "might," this Court has previously interpreted such language to mean that a court may not restrict parenting time unless that parenting time "would" endanger the child's physical health or emotional development. *D.B. v. M.B.V.*, 913 N.E.2d 1271, 1274 (Ind. Ct. App. 2009). A party who seeks to restrict a parent's visitation rights bears the burden of presenting evidence justifying such a restriction. *Id.* The burden of proof is by a preponderance of the evidence. *In re Paternity of W.C.*, 952 N.E.2d 810, 816 (Ind. Ct. App. 2011).

[17] Here, the trial court made no finding of endangerment, concluding that Mother had not met her burden of proof. Indeed, the trial court implicitly found that Mother's prior accusations against Father lacked credibility, as the court suggested that Father protect himself in the future by including others in the parenting time visits.

[18] Mother now insists that Child's wishes and best interests were disregarded and she points to testimony that Child had regressed physically and emotionally because of fear of seeing Father. Purportedly, Child had nausea and vomiting and was sleeping in Mother's bed because Child was "worried about an upcoming court date." (Tr. at 75.) However, Mother ignores evidence that Child learned of the impending court proceedings from someone having access to Child and this could not have included Father. Mother also ignores the abundant evidence that she has consistently thwarted Father's efforts to visit with Child. Although Child's therapist testified that she detected no signs of coaching and opined that visits with Father would cause Child mental or

physical harm, the court was under no obligation to adopt this opinion. *See Clark v. Madden*, 725 N.E.2d 100, 109 (Ind. Ct. App. 2000) ("the fact-finder is not required to accept the opinions of experts regarding custody").

[19] Mother essentially urges that we reweigh the evidence and credit her testimony that Father would likely fail to keep Child safe. We will not do so. Mother has failed to demonstrate that the trial court abused its discretion when Father was permitted to exercise his statutory right to parenting time.

## *Contempt Finding*

[20] At the hearing, Father testified that he had yet to receive many items of personal property allocated to him in the 2010 property division order. He testified that he had made repeated attempts to contact Mother, without success. Father had obtained police assistance and retrieved some of the personal property from Mother's yard. Other items of his property were visible behind a locked fence across the street or on his former brother-in-law's lot. The trial court found Mother in contempt, ordered her incarceration, and provided that she could purge herself of the contempt by producing an heirloom gun and paying Father the value of the other items. Mother claims that she was not properly held in contempt.

[21] A party that is willfully disobedient to a court's order may be held in contempt of court. *Wilson v. State*, 988 N.E.2d 1211, 1218 (Ind. Ct. App. 2013). Whether a person is in contempt of a court order is a matter left to the trial court's discretion, and we will reverse a finding of contempt only where an abuse of

discretion has been shown. *Geesy v. Geesy*, 959 N.E.2d 256, 258 (Ind. Ct. App. 2011). Mother does not argue that the trial court misapprehended the facts and circumstances before it. Rather, Mother attacks the 2010 order as ambiguous.

[22] Mother argues that "there can be no willful disobedience of an order as vague as the one at issue herein." (Appellant's Br. at 13.) According to Mother, the order failed to specify "who should initiate a property exchange, how it should occur, when it is to occur." (Appellant's Br. at 12.) Mother did not appeal the 2010 order. She did not seek clarification from the trial court. When Mother testified at the December 2014 hearing, she did not claim that she was confused about the order. Rather, she testified that she had received no calls, voice mails, or text messages from Father, and that she had retained none of Father's property. According to Mother, certain items had been loaned by Father to his siblings, Father had retrieved some property, and Mother's mother apparently gave some property to Father. When confronted with photographic evidence of a camper located at her brother's lot, Mother contended that it was merely similar to one awarded to Father.

[23] In short, Mother's argument is merely an attempt to collaterally attack a 2010 order. The trial court was presented with substantial evidence to support a finding that Mother willfully refused to comply with a court order. She fails to show that the trial court abused its discretion by finding her in contempt of court.

# Conclusion

The trial court acted within its discretion by permitting Father to exercise parenting time with Child and in finding Mother in contempt of court.

Affirmed.

Baker, J., and Mathias, J., concur.