# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 09 2018, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Katherine A. Harmon
Jared S. Sunday
Mallor Grodner, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Andrea L. Ciobanu
Ciobanu Law, PC
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gillian G. Moorman, <br> *Appellant-Respondent,* <br><br> v. <br><br> Kyle W. Andrews, <br> *Appellee-Petitioner.* | November 9, 2018 <br><br> Court of Appeals Case No. 18A-JP-1051 <br><br> Appeal from the Grant Superior Court <br><br> The Honorable Warren Haas, Judge <br><br> Trial Court Cause No. 27D03-1208-JP-431 |

**Mathias, Judge.**

[1] Gillian G. Moorman ("Mother") appeals the Grant Superior Court's April 12, 2018 order modifying parenting time in favor of Kyle Andrews ("Father") and

finding Mother in contempt. Mother presents several issues on appeal, which we restate as:

> I. Whether the trial court erred by finding Mother in contempt of the 2016 parenting time order in this matter and the Indiana Parenting Time Guidelines;

> II. Whether it was reversible error to hold an *in camera* interview of the child; and

> III. Whether the trial court erred by basing its decision solely on the *in camera* interview.

We affirm.

## Facts and Procedural History

T.A. was born to Mother and Father in July of 2011. Throughout T.A.'s life, Mother and Father have had difficulty co-parenting. When Mother and Father's relationship declined shortly after T.A.'s birth, in 2012, Father filed a Verified Petition to Establish Paternity and Determine Custody, Parenting Time, and Child Support. Mother and Father initially agreed to joint legal and physical custody of T.A., and the court entered an agreed order awarding the same with specific parenting time orders.

After some time, Mother and Father agreed that joint physical and legal custody was unworkable due to an inability to co-parent. In April of 2015, Father filed a Petition to Modify Custody. After a two-day hearing, on September 28, 2016, the trial court agreed that Mother and Father were unable

communicate effectively and awarded Mother sole custody of T.A. The order adopted the regular parenting time schedule pursuant to the Indiana Parenting Time Guidelines ("IPTG") and directed the parties to have Mother designated as the representative payee for Child's Social Security benefits. Father appealed this order, and a panel of our court affirmed all aspects of the trial court's order. *Andrews v. Moorman*, 86 N.E.3d 239 (Ind. Ct. App. 2017), *trans. denied*.

[4] On December 22, 2017, Father filed a Motion for Change of Venue from the Judge as well as the Petition to Modify Parenting Time and Affidavit for Citation that give rise to the instant appeal.[1] In his Affidavit for Citation, Father alleged that Mother was in violation of the IPTG because she refused to allow Father to have T.A. when she was unable to care for the child. Father also alleged that Mother refused to meet at the court-ordered location for exchange. In separate motions, he requested that T.A. be placed in counseling and that the court conduct an *in camera* interview of T.A. in order to assist the court in making its determination.[2]

---

[1] Judge Spitzer presided over the two-day hearing held on August 29–30, 2016, regarding Father's petition to modify custody. *Andrews v. Moorman*, 86 N.E.3d 239 (Ind. Ct. App. 2017), *trans. denied*. On the second day of this hearing, Judge Spitzer disclosed on the record that he had previously represented Butterworth industries, owned by Mother's extended family, approximately ten years prior to these proceedings. *Id.* While Father's attorney indicated no concern at the time of the disclosure, Father argued on appeal that Judge Spitzer should have recused himself in this matter decided on May 30, 2017. *Id.* Although a panel of our court found no error by Judge Spitzer, Father's motion for change of judge was granted. *Id.* Special Judge Haas presided over the proceedings that give rise to the instant appeal.

[2] Mother also filed a notice of intent to relocate. The trial court heard the matter in conjunction with Father's requests that are currently being considered in this appeal. Father objected to the request to relocate; however, the trial court granted mother's request. Neither party appeals this determination, and Mother's relocation is not currently at issue.

[5] The trial court held a hearing on Father's motion for contempt. In support of his requests, Father called his previous attorney, T.A.'s paternal grandmother, and himself. Mother served as her own sole witness.

[6] Father's previous counsel testified that, based on his observations, Father and T.A. had a close bond. He had observed Father and T.A. interacting on a couple of occasions, playing miniature golf and visiting a carnival. Based on his conversations with Father, he believed that T.A. was Father's first priority.

[7] T.A.'s paternal grandmother, Susan Stengel ("Stengel"), testified that she wishes to see T.A. more often but is also hesitant to encroach on Father's limited parenting time. She had been able to see T.A. outside of Father's parenting time on a couple of occasions and had asked Mother to see T.A. about three or four times since November 1, 2016. Stengel testified that she had asked Mother if T.A. could attend a family reunion, and Mother never responded. Stengel attended grandparent's day at Mother's invitation and the Christmas program at T.A.'s school. She also indicated that she believed T.A. and Father to be very close. She expressed concern for T.A.'s emotional state. In Stengel's opinion, T.A. appeared to be emotional and anxious.

[8] Father testified that Mother had been taking T.A. with her to work at her dental office instead of allowing him parenting time. He would like to care for T.A. while she was at work with Mother and "[a]ny available time." Tr. p. 41. If he had more time with T.A., he would be agreeable to doing homework with her and enrolling her in extracurriculars. Father believed that extended family

members on Mother's side were receiving time with T.A. that was supposed to be offered to him. He also testified that, until the last few weeks prior to the hearing, he had to pick up T.A. from Mother's workplace instead of the court-ordered location. On one occasion, Father had observed a man whom he could not identify dropping T.A. off at her school. On the date of the hearing, Father was unaware that Mother had sought out any counseling for T.A. Father was also concerned that T.A. had been tardy to school on nine separate occasions and that T.A. had been truant on two occasions. Mother and Father had not discussed the tardies and truancies. Lastly, Father testified that he was concerned about T.A.'s emotional state.

[9] Mother testified that she works in her step-grandmother's pediatric dental clinic and that she has been taking T.A. to work with her after T.A. finishes school. Mother testified that other employees also bring their children to work and that Mother watches T.A. while T.A. is at the office with her. She and T.A. stay at work on the days in question until Mother has to pick up T.A.'s half-brother around 4:30 or 5:00 p.m. Mother testified that T.A. had been tardy to school because, although she was dropped off at school on time, T.A. was not going to class on time. Mother dated someone for a period of time, and he was continuously in her home, but this man was no longer in the picture at the time of the hearing. T.A. does occasionally spend overnights with Mother's parents. Mother testified that she had been letting T.A. spend time with Mother's brother who is fighting cancer. She had researched counselors and made an appointment with a counselor for T.A., although she had not yet told Father.

She did not make this appointment until Father filed his petition for counseling. Mother testified that she has noticed T.A. being anxious but only since Father filed the petitions at issue. Mother testified that T.A. appeared glossy-eyed and smelled "dingy" when T.A. arrived home from time with her Father. Tr. p. 86.

[10] After the hearing, the trial court conducted an *in camera* interview of T.A. After the hearing and interview, the trial court found Mother in contempt but issued no sanctions and allowed Mother to purge herself of contempt by following all orders. The trial court also expanded Father's parenting time. In addition to relevant times as prescribed in the IPTG, the trial court extended Father's mid-week parenting time to include an overnight and extended Father's weekend parenting time, allowing Father to keep T.A. overnight from Sunday evening through Monday. The trial court also explicitly noted that Father shall have the Child for "additional parenting time at all times when Mother is working or attending classes or is otherwise unavailable to care for the Child." Appellant's App. p. 34. Mother filed the instant appeal.

## Discussion and Decision

[11] "Indiana has long recognized that the rights of parents to visit their children is a precious privilege that should be enjoyed by noncustodial parents." *Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006), *trans. denied*. "[N]ot only does a noncustodial parent have a presumed right of parenting time, but the child has the correlative right to receive parenting time from the noncustodial parent because it is presumed to be in the child's best interest." *Perkinson v. Perkinson*, 989 N.E.2d 758, 764 (Ind. 2013). Thus, a noncustodial parent is

"generally entitled to reasonable visitation rights." *Id*. at 762 (quoting *Duncan*, 843 N.E. 2d at 969).

[12] "A trial court is empowered to specify and enforce the visitation rights of the non-custodial parent pursuant to the Indiana Code." *Id*. Courts are to "give foremost consideration to the best interests of the child." *Id.* at 761 (quoting *Marlow v. Marlow*, 702 N.E.2d 733, 735 (Ind. Ct. App. 1998), *trans. denied*). As such, parenting time may be modified whenever modification would serve the best interest of the child. *Miller v. Carpenter*, 965 N.E.2d 104, 110 (Ind. Ct. App. 2012). Thus, unlike a modification of physical custody, a modification of parenting time does not require a showing of substantial change. *Id*.

[13] Upon review of a trial court's determination of a visitation issue, we grant latitude and deference to our trial courts, reversing only when the trial court manifestly abuses its discretion. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002); *Lasater v. Lasater*, 809 N.E.2d 380, 400 (Ind. Ct. App. 2004). Therefore, on appeal, it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal. *Kirk*, 770 N.E.2d at 307. No abuse of discretion occurs if there is a rational basis in the record supporting the trial court's determination. *Lasater*, 809 N.E.2d at 400. We will neither reweigh evidence nor judge the credibility of witnesses. *Id*. "We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." *Baxendale v. Raich*, 878 N.E.2d 1252, 1257–58 (Ind. 2008).

## *I. Contempt*

"Whether a person is in contempt of a court order is a matter left to the trial court's discretion." *Evans v. Evans*, 766 N.E.2d 1240, 1243 (Ind. Ct. App. 2002) (citing *Meyer v. Wolvos*, 707 N.E.2d 1029, 1031 (Ind. Ct. App. 1999), *trans. denied*). We will reverse the trial court's finding of contempt only where an abuse of discretion has been shown, which occurs only when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id*. When we review a contempt order, we neither reweigh the evidence nor judge the credibility of the witnesses. *MacIntosh v. MacIntosh*, 749 N.E.2d 626, 629 (Ind. Ct. App. 2001), *trans. denied*. Mother bears the burden of showing that her violation was not willful. *Williamson v. Creamer*, 722 N.E.2d 863, 865 (Ind. Ct. App. 2000).

In seeking a contempt citation against Mother, Father alleged that Mother violated the IPTG including the provision entitled "Opportunity for Additional Parenting Time." Father also contended that Mother had altered the location for exchanging T.A. The operative provision of the IPTG states:

> **3. Opportunity for Additional Parenting Time.** When it becomes necessary that a child be cared for by a person other than a parent or a responsible household family member, the parent needing the care shall first offer the other parent the opportunity for additional parenting time, if providing the child care by the other parent is practical considering the time available and the distance between residences. The other parent is under no obligation to provide the child care. If the other parent elects to provide this care, it shall be done at no cost and without affecting child support. The parent exercising additional

> parenting time shall provide the necessary transportation unless the parties otherwise agree.

IPTG § 1(C)(3). The trial court specifically noted that the contempt finding "concerns her conduct before she arranged to enroll the Child in Preschool and then picked her up from Preschool and took the Child to Mother's place of employment." Appellant's App. p. 33

[16] When T.A.'s preschool ended at 2:30 in the afternoon, Mother would leave work to pick up T.A. from preschool and take her to Mother's workplace. Mother routinely left work in time to pick up her other child, T.A.'s half-brother from pre-school by 5:00 p.m. Mother had initially planned to enroll T.A. in day care after her school was over. However, Father had indicated to Mother that he wanted to take T.A. as additional parenting time during the time Mother planned to have T.A. in day care. After this exchange between Mother and Father, Mother changed her plans. She did not enroll T.A. in day care, but instead picked up T.A. from preschool and took T.A. to work with Mother. Mother indicated to Father that if he picked up T.A. when she was done with school, she would "call the cops" on him. Tr. p. 30.

[17] Mother testified that she took T.A. took to work with her and that her usual job duties included cleaning and filling teeth, talking to patients, completing paperwork, scheduling appointments, and other front office duties. Undisputedly, Father was available and willing to care for the child during the time child was at work with Mother.

[18] While Mother was able to leave work to pick up T.A. from preschool, she directed Father to pick up T.A. from Mother's workplace instead of the court-ordered location for exchange. Father acquiesced to this demand for some time in order to see his child. However, in the weeks preceding the hearing, Mother began meeting him at the court-ordered location for exchange.

[19] Based on the evidence before it, the trial court did not find Mother's claim that she was actively parenting during the time T.A. accompanied her to work to be credible. The trial court also determined that Mother was intentionally acting to rearrange her schedule to deprive Father of legitimate and beneficial contact with the Child. We cannot say that the finding of contempt was against the logic and effect of the circumstances before the trial court. To find otherwise would require us to reweigh the evidence and judge the credibility of the witnesses, which we will not do.

## II. *In Camera Interview*

[20] We now turn to Mother's arguments concerning the *in camera* interview of T.A. First, she argues that the trial court lacked statutory authority to conduct the *in camera* interview. Second, she argues that the trial court erred by basing its decision solely on the results of the *in camera* interview. We disagree with Mother on both contentions.

[21] Initially, Mother argues that the trial court lacked statutory authority to conduct the *in camera* interview of T.A. More specifically, Mother argues that the "the sole basis for an in-camera interview in a parenting time modification situation .

. . is to determine if a parent is a danger to a child's physical or emotional health, such that parenting time should be restricted." Appellant's Br. at 13. Indiana Code Section 31-17-4-1 permits a trial court to conduct an *in camera* interview of a child in chambers within parenting time proceedings. The statute reads:

> (a) A parent not granted custody of the child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development.

> (b) The court may interview the child in chambers to assist the court in determining the child's perception of whether parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development.

> (c) The court may permit counsel to be present at the interview. If counsel is present:

> > (1) a record may be made of the interview; and

> > (2) the interview may be made part of the record for purposes of appeal.

Ind. Code § 31-17-4-1. Where courts interpret a statute, courts must give words used in the statute common and ordinary meaning. *Spaulding v. Int'l Bakers Servs. Inc.*, 550 N.E.2d 307, 309 (Ind. 1990). We do not overemphasize a strict literal or selective reading of individual words. *Id.*

[22] Based on a plain reading of the statute, we are not persuaded. We can find no language in the statute allowing its use solely for the purposes of restriction of parenting time. The statute plainly and simply provides an *in camera* interview as an option to assist trial courts in determining whether parenting time would physically or emotionally endanger a child. Moreover, Mother's suggested reading of the statute would unnecessarily prohibit trial courts from exercising their discretion in effectuating the best interests of children as facts and circumstances arise within parenting time matters.

[23] The history of the case in the instant matter shows evidence of concern for T.A.'s emotional state because of Mother's and Father's inability to co-parent effectively. Even more so, the testimony heard by the trial court immediately prior to the *in camera* interview reflected continued concern for T.A.'s emotional state. The trial court acted within its statutory authority to determine parenting time as it is suited to the best interests of the child when it conducted the *in camera* interview of T.A., and we can find no error.

[24] We now turn to Mother's argument that the trial court erred by relying solely on the *in camera* interview in order to increase Father's parenting time.[3] While

---

[3] Mother also asserts the *in camera* interview was conducted on the record and outside of the presence of counsel. Immediately before the interview, the trial court indicated to the parties that only the court reporter would be present for the interview. No objection to the absence of counsel was presented at that time. Tr p. 147. The trial court noted that a record would be available if there is an appeal and reminded counsel for both parties of their professional obligations not to share whatever they may hear or read. Counsel for both Mother and Father indicated their intent to abide by these professional obligations; however, no objection was made at any point during this discussion. Tr. pp. 147–48. Since no objection to the absence of counsel

trial courts are afforded latitude in parenting time decisions, a trial court's judgment "may not rest primarily upon the results of a private *in camera* interview." *McCauley v. McCauley*, 678 N.E.2d 1290, 1292 (Ind. Ct. App. 1997), *trans. denied*.

[25]   In support of her argument that the trial court erred by relying solely on the *in camera* interview, Mother relies primarily on *McCauley, supra*. In *McCauley,* a panel of our court determined that the trial court abused its discretion by relying primarily upon the results of a private *in camera* interview in order to deny visitation to a parent, as it could find no evidence in the remainder of the record supporting the trial court's decision. *Id*. Mother asserts that because the trial court did not appear to be leaning in favor of Father's requests prior to the *in camera* interview, and then after the interview, decided to find Mother in contempt and increased Father's parenting time, we can speculate that the trial court relied solely on the *in camera* interview. We decline Mother's invitation to speculate. Instead, we review the evidence contained in the record.

[26]   Upon review, we are able to locate sufficient evidence in the record outside of the *in camera* interview that supports the trial court's findings and conclusions regarding Father's parenting time. Mother testified that she took T.A. to work with her and that her job duties included cleaning and filling teeth, talking to

---

was presented at the time the interview was conducted, this argument was not properly preserved for appeal. *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000).

patients, completing paperwork, scheduling appointments, and other front office duties. Father testified that he was willing and able to care for T.A. during the time Mother had her at her place of work. This testimony from Mother and Father alone is sufficient for the trial court to determine that Mother's assertion that she was actively parenting during the time T.A. was at work with her was not credible. Any further request by Mother for this court to determine otherwise is a request for us to reweigh the evidence and judge the credibility of the witnesses, which we will not do.

## Conclusion

[27] The trial court did not abuse its discretion by finding Mother in contempt. We can find no error by the trial court when it conducted an *in camera* interview of T.A. Additionally, because sufficient evidence exists in the record outside of the *in camera* interview that supports the trial court's expansion of father's parenting time, we conclude that the trial court did not rely solely on the *in camera* interview to make its determination and therefore did not err.

[28] Affirmed.

Bailey, J., and Bradford, J., concur.