# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**WILLIAM A. RAMSEY**
Murphy Ice & Koeneman LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**DEANNA A. DEAN-WEBSTER**
Dean-Webster Wright LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| GLENN HATMAKER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1305-DR-253 |
| | ) | |
| BETTY HATMAKER, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David J. Dreyer, Judge
Cause No. 49D10-1002-DR-6242

**November 27, 2013**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Glenn Hatmaker ("Father") appeals from the deemed denial of a motion to correct error which challenged an order denying his motions for unsupervised parenting time with his child with Betty Hatmaker ("Mother"), and modification of child support. We reverse and remand for further proceedings consistent with this opinion.

**Issues**

Father presents two issues for review:

I.     Whether his parenting time was improperly restricted or eliminated; and

II.    Whether the trial court abused its discretion in its refusal to modify Father's child support obligation.

**Facts and Procedural History**

Father and Mother were married in 2003 and separated in February of 2010. Father was convicted of committing battery upon Mother and, on November 21, 2011, the parties were divorced. At that time, Father was awarded only supervised visitation with the sole child of the marriage, R.H., contingent upon the completion of domestic violence counseling.

Father, who was receiving unemployment compensation of $390 per week, was ordered to pay child support of $85 per week. At that time, Mother was earning $388.60 per week and incurring child care expenses.

Father completed domestic violence counseling and parenting classes. He also submitted to a mental health evaluation but "no mental health care was recommended." (App. 16.) Accordingly, Father was eligible for alternative misdemeanor sentencing. He also exercised parenting time with R.H. under the supervision of Kid's Voice.

2

On January 8, 2013, Father filed a motion requesting unsupervised parenting time, alleging that Kid's Voice "no longer had time available," that R.H. was suffering from parental alienation syndrome, and that an order for supervision premised upon Indiana Code section 31-14-14-5 (providing for a presumption of supervision in some domestic violence cases) was not valid more than two years after the crime. (App. 21.) He also averred that his income had decreased by more than 20% since the entry of the existing child support order, and requested a reduction in his obligation.

On February 19, 2013, a hearing was conducted at which both parties testified. Father testified that he worked two days per week at a law firm and typically saw R.H. only about two hours per month because the supervision fees were unaffordable. Mother testified that she was afraid of Father, that he had obtained her address and sent letters, and also visited R.H.'s school and questioned the principal about R.H.'s enrollment. On the same day as the school visit, Mother had called police and an officer had discovered a decapitated rabbit on Mother's doorstep. Mother suspected Father as the source.

On March 4, 2013, the trial court entered an order providing in relevant part:

1. Respondent's motions are denied.

2. Parenting time shall be furnished to Respondent as previously ordered, and may be modified upon agreement of the parties at any time.

(App. 40.) Father filed a motion to correct error, which was deemed denied. This appeal ensued.

**Discussion and Decision**

<u>I. Restriction of Parenting Time</u>

3

Father was initially afforded only supervised parenting time through Kids' Voice. Apparently due to lack of funds, Father's parenting time decreased to two hours monthly and, according to Father, Kids' Voice was no longer able or willing to maintain a time slot for him. Father argues that the trial court's refusal to lift the restriction and his inability to pay for supervised sessions if available effectively eliminates his parenting time and that he is entitled to unsupervised time with R.H..

"In all visitation controversies, courts are required to give foremost consideration to the best interests of the child." Marlow v. Marlow, 702 N.E.2d 733, 735 (Ind. Ct. App. 1998), trans. denied. We review parenting time decisions for an abuse of discretion. Id. A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. Sexton v. Sedlak, 946 N.E.2d 1177, 1183 (Ind. Ct. App. 2011), trans. denied.

"The right of non-custodial parents to visit with their children is a '"sacred and precious privilege."'" Appolon v. Faught, 796 N.E.2d 297, 300 (Ind. Ct. App. 2003) (quoting McCauley v. McCauley, 678 N.E.2d 1290, 1292 (Ind. Ct. App. 1997), trans. denied). "Ideally, a child should have a well-founded relationship with each parent." Id. Restriction of parenting time is governed by Indiana Code section 31-17-4-1(a), which provides:

> A parent not granted custody of the child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development.

Even though the statute uses the word "might," this Court has previously interpreted the language to mean that a court may not restrict parenting time unless that parenting time

4

"would" endanger the child's physical health or emotional development. D.B. v. M.B.V., 913 N.E.2d 1271, 1274 (Ind. Ct. App. 2009). A party who seeks to restrict a parent's visitation rights bears the burden of presenting evidence justifying such a restriction. Id. The burden of proof is by a preponderance of the evidence. In re Paternity of W.C., 952 N.E.2d 810, 816 (Ind. Ct. App. 2011). We believe that an order for supervision constitutes such a restriction.

Here, the dissolution decree that limited Father to supervised parenting time included no specific finding of endangerment. It appears that the restriction may have been premised, at least in part, upon Indiana Code section 31-17-2-8.3, providing in relevant part:

(a) This section applies if a court finds that a noncustodial parent has been convicted of a crime involving domestic or family violence that was witnessed or heard by the noncustodial parent's child.

(b) There is created a rebuttable presumption that the court shall order that the noncustodial parent's parenting time with the child must be supervised:

For at least one (1) year and not more than two (2) years immediately following the crime involving domestic or family violence[.][1]

Alleging that the statutory period had expired and the presumption was no longer operative, Father sought modification of the existing parenting time order. Such modifications are governed by Indiana Code section 31-17-4-2, which provides:

The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

---

[1] The dissolution decree does not explicitly reference the statute or include a factual finding that R.H. witnessed or heard domestic violence. However, the dissolution decree referred to Father's arrest and conviction for domestic battery and we presume that the dissolution court was aware of the statute.

5

Words and phrases within a statute are to be given their plain, ordinary, and usual meaning unless a contrary purpose is clearly shown by the statute itself. Barger v. Pate, 831 N.E.2d 758, 763 (Ind. Ct. App. 2005). By its plain language, the statutory presumption of Indiana Code section 31-17-2-8.3 has lapsed. In turn, the language of the modification statute provides that parenting time rights may not be restricted absent a finding by the court that parenting time might endanger the child's health or significantly impair his or her emotional development. We believe supervised visitation constitutes such a restriction.

Here, the trial court heard evidence that Father had obtained Mother's address, sent letters and visited R.H.'s school. Mother testified to her fear of Father and her suspicion that he left a decapitated rabbit at her residence. Documentary evidence indicated that Father had completed anger management and parenting classes, participated in a mental health evaluation, and qualified for alternative misdemeanor sentencing for the battery upon Mother.

The trial court made no finding of endangerment. Indeed, the trial court implicitly found that parenting time modification presented no likely danger to R.H. as the order provides for modification "upon agreement of the parties at any time." (App. 40). In essence, the order confers upon Mother the prerogative to enforce the supervision restriction at her discretion. The order is erroneous, as it is internally inconsistent and in contravention of statutory authority. Accordingly, we reverse the order denying Father parental access except when supervised or upon agreement of Mother. We remand with instructions to the trial court to either enter an order containing sufficient findings to support a parenting time

6

restriction or enter an order that does not contain such a restriction.  See Walker v. Nelson, 911 N.E.2d 124, 130 (Ind. Ct. App. 2009).

Because it will likely arise on remand, we address Father's claim that supervision fees are unaffordable in his economic circumstances, and should be a factor militating toward an order for unsupervised parenting time.  The right of parenting time is subordinated to the best interests of the child.  Lasater v. Lasater, 809 N.E.2d 380, 401 (Ind. Ct. App. 2004).  Accordingly, if unsupervised parenting time would pose a danger to a child, the parent is not entitled to dispense with supervision because of the costs associated with supervisory programs.  That said, however, our parenting time statutes do not prohibit the trial court from exploring affordable options for low-income parents, such as grandparent, relative, or child advocate volunteer supervision.  Moreover, it appears that Mother has much greater earnings than does Father and may be able to contribute to costs of supervision.

## II. Modification of Child Support

Indiana Code section 31-16-8-1 provides that child support modification may be made "upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable" or where a party has been ordered to pay an amount that differs by more than twenty percent from the child support guideline amount and the existing order was issued at least twelve months prior to the petition for modification.  A trial court's decision regarding child support will be upheld absent an abuse of discretion.  Sexton, 946 N.E.2d at 1183.

Father contends that the trial court abused its discretion by refusing to modify his child

7

support obligation in the face of uncontroverted evidence that his income had significantly decreased while Mother's had significantly increased. Mother does not dispute that her income has increased while Father's decreased, but argues that Father could not obtain a modification based upon an unsigned child support worksheet. Father then responds that he electronically signed a packet of materials including his economic statement and a child support worksheet, while Mother failed to submit an economic statement. Nevertheless, we need not enter into a debate regarding the sufficiency of Father's purported electronic signature, because a substantial change in circumstances is made evident from the parents' testimony under oath, child support worksheets, paycheck stubs, and other documentation.

Mother's signed worksheet indicates that her income had increased from $388.60 weekly to $837 weekly. She no longer incurred child care expenses, but paid $15 per week in medical and dental insurance premiums for R.H. In addition to his worksheet, Father submitted into evidence a document disclosing that he had exhausted his unemployment benefits. He submitted paycheck stubs from part-time work and testified that he had, two weeks previously, obtained employment paying $128 per week. Mother also submitted into evidence her paycheck stubs.

Based upon this data, the Indiana Child Support Guideline amount of Father's obligation would be $22 weekly. The existing order was for $85 weekly. It is also noteworthy that Father was responsible for paying all costs of supervised parenting time. The trial court's refusal to modify Father's child support is contrary to the facts and circumstances before it. We therefore reverse the order and remand for a child support order

consistent with the Indiana Child Support Guidelines or providing reasons for a deviation.

Because it will likely arise on remand, we address Father's contention that a modification of his child support should be retroactive to the date he filed his petition. Generally, the trial court has the discretionary power to make a modification for child support relate back to the date the petition to modify is filed or any date thereafter chosen by the trial court. Sexton, 946 N.E.2d at 1183. Accordingly, while the trial court may choose to grant Father's request for relation back to the filing date, Father has no statutory entitlement to such.

**Conclusion**

The order for supervised parenting time, modifiable upon agreement of the parties, is contrary to law. The trial court abused its discretion by refusing to modify Father's child support obligation in the face of uncontroverted evidence that Mother's income had increased substantially while Father's income had decreased substantially.

Reversed and remanded for further proceedings consistent with this opinion.

MAY, J., and BRADFORD, J., concur.