

**FILED**

Jul 29 2016, 9:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEY FOR APPELLEE

Christopher L. Clerc
Columbus, Indiana

I N  T H E
# COURT OF APPEALS OF INDIANA

In re the Paternity of P.B.,

M.L.B.,

*Appellant-Respondent,*

v.

D.L.B.,

*Appellee-Petitioner*

July 29, 2016

Court of Appeals Case No.
03A05-1601-JP-46

Appeal from the Bartholomew
Circuit Court

The Honorable Jonathan W.
Webster, Special Judge

Trial Court Cause No.
03C01-0110-JP-1440

**Mathias, Judge.**

[1] M.L.B. ("Father") appeals the order of the Bartholomew Circuit Court denying his petition to enforce the trial court's previous parenting time and reunification orders and his petition to hold D.L.B. ("Mother") in contempt for her failure to cooperate with reunification and parenting time. On appeal, Father claims that the trial court abused its discretion by failing to enforce its previous orders.

We reverse and remand.

## Facts and Procedural History[1]

This case has a long procedural history, and this is the third time this case has come up on appeal to our court. P.B was born in July 2001, and paternity was established by agreement between Mother and Father on November 20, 2001. Mother was granted primary physical custody of the child, and Father was granted parenting time and ordered to pay child support.

From 2002 to 2004, the parties repeatedly litigated issues regarding parenting time and other related matters. In April 2007, the parties again litigated issues regarding parenting time, and the trial court found Mother in contempt for failing to comply with the court's parenting time order. In December of 2008, the parties once again litigated the issue of child support and parenting time, and Father was given "make-up" parenting time.

In 2009, Mother filed a petition for contempt against Father relating to an allegation that Father had failed to comply with the parenting time order. On March 4, 2009, Mother filed an emergency petition to modify and terminate Father's parenting time. This petition referenced allegations that Father had held a gun to P.B.'s head and had masturbated in his presence on separate occasions in late 2008. These allegations were reported to Child Protective

---

[1] We take much of the background facts from two of our prior decisions in this matter. *See In re Paternity of P.B.*, 932 N.E.2d 712, 715 (Ind. Ct. App. 2010); *In re Paternity of P.B.*, No. 03A01-1012-JP-653 (Ind. Ct. App. Oct. 12, 2011), *aff'd on reh'g* (Ind. Ct. App. Dec. 20, 2011).

Services ("CPS"), which found them to be unsubstantiated. On March 17, 2009, Father filed a petition for contempt, apparently related to Mother's alleged interference with and denial of parenting time, and a petition to modify parenting time. Father subsequently moved the trial court to appoint a guardian ad litem ("GAL"), appoint a counselor to conduct a psychological evaluation, and have all parties submit to counseling. On June 1, 2009, the trial court denied Father's request to appoint a GAL and to appoint an evaluative counselor. On July 27, 2009, Mother filed another petition for contempt.

[6] The court held a hearing on these pending motions, and on December 11, 2009, entered an order noting that although Mother's November 17, 2008 petition facially sought only to modify parenting time, her request actually sought to terminate Father's parenting time entirely. The trial court concluded that because Mother sought to eliminate all of Father's parenting time, she had to demonstrate by "clear and convincing" evidence that termination of parenting time was in P.B.'s best interest, similar to the standard used when the State seeks to terminate parental rights. Applying this heightened standard to the evidence, the court concluded that Mother did not meet that burden and ordered that Father have parenting time pursuant to the Indiana Parenting Time Guidelines.

[7] Mother appealed and we reversed, holding that the appropriate burden of proof was the preponderance of the evidence standard. *See In re Paternity of P.B.*, 932 N.E.2d 712, 720 (Ind. Ct. App. 2010). We remanded for the trial court to reconsider the matter applying the proper standard. *Id.*

[8] On remand, the trial court held another hearing and issued an order that found that, under the less burdensome preponderance of the evidence standard, Father's parenting time should be limited but not eliminated or supervised "to allow for [Father] and [P.B.] to slowly reunify their relationship." The court therefore granted father six hours of parenting time every Saturday in addition to Christmas Eve and New Year's Day.

[9] Mother again appealed, and we affirmed. *In re Paternity of P.B.*, No. 03A01-1012-JP-653, 2011 WL 4834251 (Ind. Ct. App. Oct. 12, 2011). In so doing, we noted that the trial court made no finding that parenting time with Father would endanger P.B.'s physical health or well-being or would significantly impair his emotional development. *Id.* at *3. In fact, instead of eliminating Father's parenting time as requested by Mother, the trial court determined that Father should have six hours of *unsupervised* visitation per week. *Id.* We therefore concluded that the trial court "determined that Mother did not meet her burden to establish by a preponderance of the evidence that parenting time with Father would endanger or impair P.B." *Id.*

[10] Noting the evidence favorable to the trial court's decision, we held that the trial court's decision to not eliminate Father's parenting time was not an abuse of its discretion.[2] *Id.*

---

[2] This evidence included:

> Here, the allegations of inappropriate touching and disciplinary threats by Father were investigated by authorities and determined to be unsubstantiated. Father denied the

Unsatisfied with this court's decision, Mother sought rehearing. However, her petition did not point out any legal or factual error in our decision and merely asked us to reweigh the evidence. We denied Mother's request but granted rehearing for the limited purpose of awarding Father appellate attorney fees due to Mother's procedural bad faith in filing the petition for rehearing. *In re Paternity of P.B.*, 03A01-1012-JP-653, 2011 WL 6660408 (Ind. Ct. App. Dec. 20, 2011). The trial court subsequently awarded Father $1,024 in attorney fees pursuant to our decision on rehearing and appointed a counselor to assist in the reunification of Father and P.B.

Alas, this was not the end of the parties' conflict. Mother continued to refuse to allow P.B. to visit Father. And P.B. began to refuse to visit Father. Therefore,

---

allegations at the hearing, and P.B. did not testify that Father touched him or disciplined him inappropriately. Even though P.B. was alleged to suffer physical symptoms from post-traumatic stress syndrome such as urinating or defecating in his pants, his daycare records document no such incidents.

Rose Ellen Adams, a licensed social worker and Father's friend, testified that she would not hesitate to leave her own children with Father, and described Father's involvement in P.B.'s life as a non-custodial parent as "admirable." Based on her observations, Father does not discipline P.B. harshly, and instead uses "time out" and "redirection" methods. Two teacher aides at P.B.'s school both testified that P.B. was not fearful when interacting with Father, and instead appeared happy to see him when Father visited for lunch. Two of P.B.'s football coaches also testified and both stated that P.B. did not appear afraid of Father. To the contrary, P.B. was very loving towards Father, and the two seemed to enjoy a loving father-son relationship.

Father's brother also testified that P.B.'s relationship with Father is "positive" and that he has never observed Father perform any actions around P.B. that would concern him. Father's landlord stated that Father's discipline of P.B. was "very appropriate" and that P.B. had "great respect" for Father. He added that P.B. always seemed happy to be with Father, that they got along, and that P.B. was always smiling and happy regardless of what they were doing.

*Id.* (transcript citations omitted).

on February 13, 2012, Father filed a citation for contempt against Mother. Two days later, Mother filed a petition to modify custody and a citation for contempt against Father. The court held a hearing on these and other pending motions over three days, and on November 9, 2012, entered the following findings and conclusions:

### Findings of Fact

3. In this Court's Order on Remand of December 8, 2010, [Father] was given parenting time as follows . . . . *Despite the clarity of this Order, [Father] has had no parenting time since December 25, 2009, because [Mother], by her own frank admission, has not allowed it.*

4. In May or June of 2010, [Father] attempted to attend an "award ceremony" at [P.B.]'s school. A school official asked him to leave, for reasons still unclear, and [Father] left so as not to create a scene.

5. Since the Order on Remand of December, 2010, [P.B.] has continued to counsel with William C. "Pete" Link. Mr. Link also meets with [Mother], but has never met with [Father]. Mr. Link's basic opinion in 2012 is unchanged from his previous opinion that something terribly bad has happened between [P.B.] and [Father] and that [Father] have no parenting time with [P.B.] and to permit parenting time will devastate [P.B.]

6. On or about December 19, 2011, on [Father]'s motion, a "Reunification Counselor" was requested. On February 23, 2012, the Court appointed psychologist Dr. Steven House, Ph.D., HSPP, of Columbus. Dr. House filed his forty-five (45) page report with this Court on June 19, 2012. . . .

7. In the end, Dr. House opined that [Mother] is opposed to any reunification or parenting time and that if parenting time is to occur, it can only be after intervention and he recommended Ms. Fran Taylor of Columbus.

8. Since December 2009, there have been two remarkable events which have occurred in this case:

**A.  Another Report to the Indiana Department of Child Services, Bartholomew County Office.**  After the December, 2009, visit, [Mother] and later, Pete C. Link, reported [Father] to the Indiana Department of Child Services, Bartholomew County Office, for allegations arising during the visit. As had been the case with all of [Mother]'s prior reports, the Bartholomew County Office investigated the allegations and determined them to be "unsubstantiated". Despite [Mother]'s best efforts to dismiss this finding as vague or meaningless, the Bartholomew County Office AGAIN chose to take no action.

What Ms. Gordon of the Bartholomew County Office did recommend to [Mother] and [Father] was that [Mother] take [P.B.] to the Child Advocacy Center for further interview and investigation.  [Mother] has not done so.

**B.  Report to the Columbus Police Department.** As a result of the December 2009 visit, [Mother] also reported [Father] to the Columbus Police Department for allegations of inappropriate sexual contact with [P.B.]. This occurred on December 28, 2009. The Columbus Police Department conducted an investigation and found the allegation was without merit. The report was not even forwarded to the Bartholomew County Prosecutor's Office.

9. [R.B.], [Father]'s brother, testified that during the Christmas 2009 visit, all was well and saw no reason for concern.

10. After nearly four (4) [y]ears of accusations, days and days of trial time and an appeal to the Indiana Court of Appeals, there has yet to be one (1) criminal charge filed against [Father] nor any substantiated reports by the Indiana Department of Child Services, despite the fact there have been no less than four (4) reports made against [Father]. Coupled with this is now eleven (11) year old boy who seems to function in his day-to-day life and [Father], who by everyone's account, except [Mother] and [P.B.], is a "normal" guy living and working a typical middle class life and a loving father.

11.  [P.B.]'s allegations include [Father] holding a gun to his head, sexually molesting him, throwing a chair at him, and "infecting" him with scarlet fever, all of which seems greatly out of character for [Father] and bizarre, to say the least. Conversely, [Mother] and Pete Link insist [P.B.] hates [Father], wants him dead, and suffers physically at the sight of [Father].

12.  [Father] clearly recognizes the problem and has offered to do anything to fix it. [Mother], unfortunately, has not.

## Conclusions

* * *

14.  Within the next thirty (30) days, [Father] shall arrange for he and [P.B.] to meet and counsel with Fran Taylor, if requested by her, and Fran Taylor shall be permitted to see Mr. Link's reports, if she deems it advisable.

15.  Fran Taylor shall fashion a reunification schedule for [Father] and [P.B.], unless she finds reunification is not possible or would be harmful to [P.B.].

16.  [Mother] shall fully cooperate with Fran Taylor, in making certain [P.B.] attends all scheduled visits and nothing in this Order shall preclude [Mother] from participating with Fran Taylor if Fran Taylor believes it helpful.

17.  If not already paid in full, [Mother] shall pay one thousand twenty-four dollars ($1,024.00) to [Father's appellate attorney] by November 30, 2012 with eight percent (8%) interest retroactive to March 8, 2012. These are the previously ordered appellate attorney fees.

18.  [Mother]'s petition to modify is **denied**.

19.  Both [Mother] and [Father] have willfully disregarded this Court's previous orders. [Mother] by flatly refusing any parenting time, and [Father] by non-payment of child support. Both are in contempt. Both shall pay their own attorney fees.

20.  [Father] shall continue to pay his child support of one hundred seventy-four dollars and fifty cents ($174.50) plus thirty

dollars ($30.00) per week on the arrearage of seven thousand six hundred seventy-seven dollars and fifty cents ($7,677.50) as of and including September 23, 2012.

21. No youngster should have to endure what [P.B.] has during his first eleven (11) years of life. One of his parents, frankly, is, at best, a chronic, manipulative liar with no regard for [P.B.]. This Court is unable to determine which one it is, but [P.B.] knows and soon the day will come when he is old and mature enough to tell. Hopefully, the emotional damage will not be so severe that he suffers a lifetime from it.

Appellant's App. pp. 76-80 (bold emphasis in original, italic emphasis supplied).

[13] The parties subsequently met with the reunification counselor, Ms. Taylor, who issued a report to the trial court on March 18, 2013. In her report, Ms. Taylor noted the animus between the parties and recommended: (1) P.B. continue therapy, (2) "when [P.B.] is ready, [Father] would be introduced into the therapeutic setting allowing [P.B.] to express his anger and concerns to his father in a therapeutic manner with supervision," and (3) professionally supervised visitation for P.B. and Father when it was deemed appropriate. Appellant's App. p. 82.

[14] Thereafter, Father filed another contempt citation against Mother, claiming that she refused to bring P.B. to the counseling sessions with Ms. Taylor. Mother filed her own contempt citation against Father for failure to pay child support and denied that she had failed to comply with the court's earlier order. Ms. Taylor then filed an updated report with the trial court, again recommending

counseling for Father and P.B. On August 7, 2013, the trial court ordered both parents to cooperate and participate with the counselor.

[15] On October 13, 2013, Mother filed yet another citation for contempt, again alleging that Father was in arrears on his child support obligation. Father filed another citation for contempt on October 30, 2014, alleging that Mother was still failing to cooperate with reunification and obstructing his parenting time. At the same time, Father filed petitions to enforce the trial court's December 8, 2010 reunification and parenting time order.

[16] The trial court held a hearing on these pending matters on June 1, 2015. The trial court also held an *in camera* interview with P.B. On July 15, 2015, the trial court issued the order that is the subject of the current appeal, which provided in relevant part:

> 2. [P.B.] turned fourteen (14) . . . and will be an eighth grader at [middle school]. He is a physically healthy young man. He is well mannered, well spoken and articulate.
>
> * * *
>
> 4. Th[e] [child support] arrearage shall be paid at the rate of Thirty and no/100 Dollars ($30.00) per week as previously ordered.

5. There is no evidence [Mother] is using a name other than [P.B.] as ordered by Judge Heimann on December 8, 2008. His official school records do not show otherwise.[3]

6. [Father] has not seen his son in a parenting time visit since December 2009. In the intervening five (5) years, this Court has tried and tried to implement a plan for reunification, all having failed for a host of reasons, but most significantly by [P.B.]'s refusing to see [Father].

7. *[Mother] has again made it quite clear she will not abide by any Court Order that forces [P.B.] to visit [Father].*

8. Courts throughout Indiana are faced with the dilemma faced by this Court. How do you force parenting time between a fourteen (14) year old child and a parent? [P.B.] is presently six (6) feet tall. He is a young man. We cannot grab him and force him to go. We cannot strap him in his car seat. We cannot keep him from running away, if he is forced to go with [Father]. Yet, he is the child, not the parent. Could he also abate [Father]'s obligation to pay child support? Thus, the dilemma. This Court has tried and tried to fashion a remedy, including counseling, and without [P.B.] being a willing participant, counseling is a waste of time and money.

9. The Court declines to force parenting time upon a fourteen (14) year old young man adamant about having no contact or relationship with his Father.

10. [Father]'s Petition for Citation for Contempt is denied. [Father]'s Petition to Enforce Parenting Time Order is denied. [Father]'s Petition to Enforce Reunification Order is denied. [Father]'s Petition for Citation for Contempt of October 29, 2014 is denied. [Mother]'s Petition and Application for Citation for Contempt for Failure to Pay Child Support is Denied.

---

[3] Contrary to this finding, P.B.'s school records, which were admitted into evidence, show that P.B. was registered at school using a compound or hyphenated last name composed of both Mother and Father's last names. Ex. Vol., Respondent's Ex. B-2. Father makes no claim of error in this regard.

11. Each party shall pay their own attorney's fees and costs incurred herein.

Appellant's App. pp. 112-13.

[17] Father filed a motion to correct error on August 14, 2015, and the trial court set the matter for a hearing to be held on December 3, 2015. Following the hearing, the trial court issued an order denying the motion to correct error on December 7, 2015. Father now appeals.

## Discussion and Decision

[18] On appeal, Father claims that the trial court erred when it failed to enforce its previous visitation orders. Father contends that the effect of the trial court's ruling is to wholly deprive him of parenting time, which is improper without a finding that parenting time would endanger P.B.'s physical or mental wellbeing.

[19] The right of a non-custodial parent to visit with his or her children is a sacred and precious privilege, and, ideally, a child should have a well-founded relationship with both parents. *Appolon v. Faught*, 796 N.E.2d 297, 300 (Ind. Ct. App. 2003). Accordingly, it has been held that:

> [e]xtraordinary circumstances must exist to deny parenting time to a parent, which necessarily denies the same to the child. If the trial court finds such extraordinary circumstances do exist, then the trial court shall make specific findings regarding its conclusion that parenting time would endanger the child's physical health or significantly impair the child's emotional development.

*Perkinson v. Perkinson*, 989 N.E.2d 758, 765 (Ind. 2013). This language from *Perkinson* tracks that of Indiana Code section 31-17-4-1, which provides that "[a] parent not granted custody of the child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development." Even though the statute uses the word "might," this Court has previously interpreted the language to mean that a court may not restrict parenting time unless that parenting time "would" endanger the child's physical health or emotional development. *Hatmaker v. Hatmaker*, 998 N.E.2d 758, 761 (Ind. Ct. App. 2013).

[20] The party who seeks to restrict a parent's visitation rights bears the burden of proving by a preponderance of the evidence a justification for such a restriction. *Id.* As in all parenting time controversies, courts are required to give foremost consideration to the best interests of the child. *Id.* On appeal, we review and will reverse a trial court's determination of a parenting time issue only for an abuse of discretion. *Id.*

[21] Father claims that this appeal is about his being deprived parenting time. Mother, however, claims it is simply about the trial court exercising its discretion to not find her in contempt. We think these two issues are inextricably interwoven in the present case because of Mother's long and admitted history of interfering with Father's parenting time. Thus, Father's request to hold Mother in contempt was an effort to enforce the *already existing*

order that he have parenting time. We therefore address both the issues of parenting time and contempt.

[22] We first note that it is apparent from the face of the trial court's order that the court did *not* find that parenting time by Father would endanger the P.B.'s physical health or significantly impair P.B.'s emotional development. Indeed, this court has already viewed the trial court's December 2009 order as *not* finding that P.B.'s physical health would not be endangered and his emotional development would not be significantly impaired by parenting time with Father. *See In re Paternity of P.B.*, No. 03A01-1012-JP-653, 2011 WL 4834251 at *3. The trial court reaffirmed this view in its order of November 2012, when it yet again denied Mother's request to deny Father parenting time. In its most recent order, the trial court does not suggest it has suddenly concluded otherwise.

[23] The trial court also found, however, that Father has not had parenting time with P.B. since December 2009. Although part of this is obviously due to P.B.'s desire, rightly or wrongly, not to see his father, a great portion of it must be placed at the feet of Mother. From December of 2009, Mother has completely denied Father court-ordered parenting time. Indeed, the trial court specifically found in its 2012 order that Father had not had any parenting time because of Mother's "frank admission" that she had not allowed it. Again in its most recent order, the trial court specifically found that Mother "will not abide by any Court Order that forces [P.B.] to visit [Father]." Appellant's App. p. 112.

[24]    In light of this stark admission, we are at a loss as to why the trial court found that Mother was not in contempt. She has, over the past several years, repeatedly and flagrantly disobeyed the trial court's parenting time orders, orders that have been affirmed on appeal by this court. Under these facts and circumstances, we have little choice but to conclude that the trial court abused its discretion when it concluded that Mother was not in contempt for failing to abide by the trial court's previous parenting time and reunification orders. On remand, the trial court should determine what sanction is appropriate to remedy Mother's obstinate disregard for the trial court's authority.

[25]    While we sympathize with the dilemma with which the trial court was faced, the proper solution was not to refuse to enforce its orders. Instead, the trial court should have used its authority to ensure that its orders are obeyed and not disregarded as mere suggestions. No one, especially not a parent, should be under the impression that compliance with the trial court's parenting time order is optional.

[26]    Because the trial court declined to enforce its earlier parenting time order, Father is left with no parenting time. Yet, as noted above, no finding would support the deprivation of Father's parenting time. It is obvious that this is a difficult situation. Either Father abused his son or he did not. However, no charges have ever been filed against Father for his alleged behavior. In fact, all of the investigations have determined that the reports were unsubstantiated. More importantly, the trial court has never found that parenting time with Father would be harmful to P.B. Instead, the trial court has repeatedly declined

to deprive Father of parenting time and, instead, has ordered a process of gradual reunification. However, this reunification cannot take place unless the trial court's orders are enforced and obeyed.

[27] We therefore conclude that the trial court's order currently on appeal must be reversed. The trial court abused its discretion in concluding that Mother was not in contempt for her admitted refusal to follow the clear mandate of the trial court's earlier orders. If Father is to be deprived of his right to parenting time with his son, the law requires a finding that such parenting time would endanger his physical health or significantly impair his emotional development, but no such finding is in the record. We therefore reverse the trial court's order and remand with instructions that the trial court enter a contempt sanction against Mother that will be sufficient to enforce its parenting time order.

[28] Reversed and remanded for proceedings consistent with this decision.

Vaidik, C.J., and Barnes, J., concur.