## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 25 2017, 10:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Heather M. Shumaker
Schuckit & Associates, PC
Zionsville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Karen Ellen Fielder, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Brandon Eric Fielder, <br> *Appellee-Respondent.* | May 25, 2017 <br><br> Court of Appeals Case No. 49A02-1609-DR-2038 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable James B. Osborn, Judge <br><br> Trial Court Cause No. 49D04-1104-DR-12772 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Karen Fielder (Mother), appeals the trial court's modification of her parenting time with the minor children.

We affirm.

# ISSUE

Mother presents us with one issue on appeal, which we restate as: Whether the trial court abused its discretion in modifying her parenting time with her minor children.

# FACTS AND PROCEDURAL HISTORY

Mother and Appellee-Respondent, Brandon Fielder (Father), have been involved in protracted dissolution of marriage and custody proceedings since 2011. Upon the dissolution of their marriage, Father received sole legal and physical custody of the three minor children, now 10-year-old Ke.F., 13-year-old Ky.F, and 17-year-old B.F. Mother was granted supervised parenting time and was ordered to pay child support. On April 26, 2016, the trial court modified Mother's parenting time schedule, granting her unsupervised visits with Ke.F. and Ky.F. for five hours every other weekend. On May 19, 2016, Mother filed a motion to modify custody, requesting sole physical custody of the minor children.

On August 15, 2016, the trial court conducted a hearing on Mother's motion. During the hearing, the children's Guardian ad Litem, David Reed (GAL

Reed), testified as to his recommendations with respect to Mother's motion. GAL Reed recommended leaving sole physical and legal custody with Father because the "children are doing very well in his care, and they are succeeding." (Transcript p. 159). Expressing his surprise that the unsupervised visits with Mother were going well, he advised that Mother's unsupervised parenting time should be increased to gradually become more in line with the Indiana Parenting Time Guidelines (the Guidelines), with the exception of overnight visitation. To ensure the children's safety, GAL Reed suggested that the children have access to a phone to contact Father at any time they feel unsafe or uncomfortable during the visit. Recognizing that "there's a positive movement with regard to the relationship [Mother] has with her children," GAL Reed clarified that "extending [her] time actually makes me nervous as to how they might do going forward. I hope they continue to do well." (Tr. pp. 161-62, 165).

[6] The trial court extensively questioned GAL Reed as to why he did not recommend overnight visitation in accordance with the Guidelines. In response, GAL Reed recalled certain incidents with Mother which occurred prior to the previous modification, and which had been taken into account when the previous order had granted Mother limited unsupervised visitation. GAL Reed mentioned that after the limited unsupervised visitation took effect, Ke.F. and Ky.F. "began to tell me that they are reluctant to spend the night with their [M]other." (Tr. p. 164). "When I ask them what they want to see happen, they have both [] expressed the desire to spend more time with their

[M]other, [], which I think is healthy, but they have both voiced reservations about spending the night with her." (Tr. pp. 164-65). GAL Reed tempered his remarks and indicated that he could envision a time when overnight visits would be appropriate

> if things continue to go well with them having extended time together with no issues noted and the children feeling comfortable and feeling safe, [], they have access to a phone; they can contact [Father] if they feel uncomfortable or unsafe, then I could consider at some point down the road thinking that would be a reasonable thing to do.

(Tr. p. 165).

[7] Likewise, Father expressed his surprise that the five-hour unsupervised visits were going well: "[D]uring those five hour visits during the day, [] she keeps going from event to event, . . ., keeping the kids occupied during the entire time with the things that they're doing, which makes it a little easier as opposed to just home time." (Tr. p. 174). In line with GAL Reed's recommendation, Father opined that "extending the visits would still be appropriate at this time just because [the children] have not expressed any deep concerns to me. [M]y concern is that still if they go into much longer or overnight during those down times when kids aren't doing something every minute that is that where it could get more stressful on her. That's my only concern." (Tr. p. 175).

[8] The following day, on August 16, 2016, the trial court issued its Order on Mother's motion for modification of child custody, which concluded, in pertinent part:

1. Since the last [c]ourt Order modifying parenting time, nothing has changed that would support the [c]ourt's granting Mother's request for full custody. Father will continue to have sole physical and legal custody of the children.

2. Since the last [c]ourt Order modifying parenting time, Mother's unsupervised time with her children has gone without incident. Mother has displayed improved coping skills and more stability than in the past. Therefore Mother's unsupervised time with [Ky.F. and Ke.F] will be increased to twelve hours every other weekend (either Saturday or Sunday). The parties may agree as to whether the visits occur on Saturday or Sunday and what hours the visits shall take place. But in the absence of agreement, the visits shall take place on Saturdays from 8:00 a.m. to 8:00 p.m. If conflicts arise for these visits on the part of either party, the parties shall communicate with one another via text or email as soon as the conflict is known and arrange an alternative date for the visit. During all times with Mother, the children are allowed to have a cellular telephone and are permitted to contact Father if at any point they feel uncomfortable or unsafe. In that event, Father may immediately retrieve the children.

3. Mother and Father are ordered to actively communicate through the communication book. If the need for more immediate communication arises, Mother and Father may either text or email each other to address the immediate concern.

4. The [c]ourt reminds both Mother and Father that neither should speak negatively about the other parent in the presence of or within earshot of the children.

5. The GAL is directed to conduct a one-month and three-month review with the children to determine how the

visitations are proceeding and to take any other action the GAL may deem appropriate.

\* \* \* \*

7. All other prior [c]ourt Orders remain in effect.

(Appellant's App. Conf. Vol., pp. 50-51).[1]

Mother now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

No longer contesting the denial of a change in custody, Mother focuses her argument on the trial court's change in parenting time. Specifically, she contends that the modification of her parenting time in deviation of the minimum recommendations under the Guidelines required the trial court to make a finding that the visitation would endanger her children's physical health or significantly impair their emotional development. Because the trial court failed to make that explicit finding, Mother claims that she is entitled to the parenting time in accordance with the Guidelines.

---

[1] We recognize that Mother excluded the trial court's Order from public access pursuant to Appellate Rule 9(G), and therefore, we will endeavor to maintain confidentiality on appeal by omitting certain names and facts. But an appellate judicial opinion that both decides the case and articulates the law requires consideration of the underlying facts. Thus, we have included a number of facts derived from the confidential record because we deem such information essential to the resolution of the litigation and appropriate to further the establishment of precedent and the development of the law. *See Drake v. Dickey*, 2 N.E.3d 30, 32 (Ind. Ct. App. 2013), *aff'd*, 12 N.E.3d 875 (Ind. 2014).

[11] "In all visitation controversies, courts are required to give foremost consideration to the best interests of the child." *Hatmaker v. Hatmaker*, 998 N.E.2d 758, 760 (Ind. Ct. App. 2013) (quoting *Marlow v. Marlow*, 702 N.E.2d 733, 735 (Ind. Ct. App. 1998), *trans, denied*), *trans. denied*. We review parenting time decisions for an abuse of discretion. *Hatmaker*, 998 N.E.2d at 761. A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id*. It appears that in the instant case, the trial court entered *sua sponte* findings. In such a situation, the specific factual findings control only the issues that they cover, and a general judgment standard applies to issues upon which there are no findings. *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013), *aff'd on reh'g*, 4 N.E.3d 666 (Ind. Ct. App. 2013). "It is not necessary that each and every finding be correct, and even if one or more findings are clearly erroneous, we may affirm the judgment if it is supported by other findings or otherwise supported by the record." *Id*. We may affirm a general judgment with *sua sponte* findings on any legal theory supported by the evidence. *Id*. In reviewing the accuracy of the findings, we first consider whether the evidence supports them. *Id.* We then consider whether the findings support the judgment. *Id.* "We will disregard a finding only if it is clearly erroneous, which means the record contains no facts to support it either directly or by inference." *Id*.

[12] A judgment also is clearly erroneous if it relies on an incorrect legal standard, and we will not defer to a trial court's legal conclusions. *Id*. at 998-99. We give

due regard to the trial court's ability to assess the credibility of witnesses and will not reweigh the evidence, and we must consider only the evidence most favorable to the judgment along with all reasonable inferences drawn in favor of the judgments. *Id*. at 999. Additionally, we "give considerable deference to the findings of the trial court in family law matters." *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005). This deference is a reflection that the trial court is in the best position to judge the facts, ascertain family dynamics, and judge witness credibility. *Id*. "But to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result." *Id*. at 941.

[13] Initially we note that Father did not file an appellate brief. When the appellee has failed to submit an answer brief we need not undertake the burden of developing an argument on the appellee's behalf. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). Rather, we will reverse the trial court's judgment if the appellant's brief presents a case of *prima facie* error. *Id*. *Prima facie* error in this context is defined as, "at first sight, on first appearance, or on the face of it." *Id*. Where an appellant is unable to meet this burden, we will affirm. *Id*.

[14] Restriction or denial of parenting time as recommended under the Guidelines is governed by Indiana Code Section 31-17-4-2, which provides as follows:

> The court may modify an order granting or denying parenting time rights whenever modification would serve in the best interests of the child. However, the court shall not restrict a

parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

Indiana recognizes that the right of a noncustodial parent to spend time with his or her children is a "precious privilege." *Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006), *trans. denied*. Thus, although a court may modify a parenting time order when the modification would serve the interest of the child or children, a parent's parenting time rights shall not be restricted unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development. *Id*. Even though the statute uses the word "might," we have previously interpreted this language to mean that a court may not restrict parenting time unless that parenting time "would" endanger the child's physical health or emotional development. *D.B. v. M.B.V.*, 913 N.E.2d 1271, 1274 (Ind. Ct. App. 2009), *reh'g denied*. A parent who seeks to restrict a parent's parenting time rights bears the burden of presenting evidence justifying such a restriction. *Id*.

[15] While we agree with Mother that the trial court did not explicitly find that parenting time in accordance with the Guidelines would endanger the children's physical health or significantly impair the children's emotional development, the trial court concluded so implicitly. *See, e.g., J.M. v. N.M.*, 844 N.E.2d 590, 600 (Ind. Ct. App. 2006) (Although no express finding was made, evidence was presented to support the conclusion that unsupervised parenting time would significantly impair the child's emotional development.), *trans.*

*denied*. In its findings, the trial court articulated a concern for the children's safety by ordering that "[d]uring all times with Mother, the children are allowed to have a cellular telephone and are permitted to contact Father if at any point they feel uncomfortable or unsafe." (Appellant's Conf. Vol., p. 51).

[16] Moreover, the evidence presented at the hearing supports a similar conclusion. Even though both GAL Reed and Father expressed surprise at the relative success of the current unsupervised visitations, both articulated strong reservations to immediately increase the unsupervised visitation to the Guidelines' recommended parenting time. While agreeing that Mother should receive an increase in visitation time with the children, based on past experience, they both advised to gradually increase the parenting time so as to secure the safety of the children and not make these visits too "stressful" for Mother. (Tr. p. 175). Even the children voiced a hesitation, through GAL Reed's testimony, to overnight visitation with Mother at this time.

[17] While we recognize that the current unsupervised visitation schedule still falls shy of the recommended parenting time under the Guidelines, it does represent an improvement on the previous order and provides Mother with immediate opportunities for more favorable visitation and a pathway to eventually secure parenting time in accordance with the Guidelines. Overall, we conclude that the trial court took a thoughtful approach to the visitation issue and struck a balance that adequately addresses the concerns of all, while recognizing the "positive movement" of Mother's relationship with the children, and by providing Mother with opportunities for more rewarding parenting time,

immediately and in the future. (Tr. p. 162). As the wellbeing of the children is always our foremost concern, we affirm the trial court that at this time visitation pursuant to the Guidelines between Mother and the children would endanger their physical health or significantly impair their emotional development. *See* I.C. § 31-17-4-2. Therefore, we conclude that Mother failed to establish an abuse of discretion by the trial court.

# CONCLUSION

[18] Based on the foregoing, we hold that the trial court did not abuse its discretion when it modified Mother's parenting time.

[19] Affirmed.

[20] May, J. and Bradford, J. concur