## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 26 2019, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jonathan R. Deenik
Deenik Law, LLC
Greenwood, Indiana

ATTORNEY FOR APPELLEE

Trenna S. Parker
Trenna S. Parker Law Office, P.C.
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Carrie Bennett,

*Appellant-Respondent,*

v.

Frederick Bennett,

*Appellee-Petitioner.*

March 26, 2019

Court of Appeals Case No.
18A-DR-1550

Appeal from the Hamilton
Superior Court

The Honorable David K. Najjar,
Judge

Trial Court Cause No.
29D05-1309-DR-8368

**Mathias, Judge.**

[1]   Carrie Bennett ("Mother") appeals the Hamilton Superior Court's order restricting her parenting time with the parties' minor child to supervised parenting time in a therapeutic setting. Mother argues that the court's order is not supported by the evidence.

We affirm.

## Facts and Procedural History

Mother and Frederick Bennett ("Father") have five children, but four of the five children are now legally adults. The youngest child at issue in this appeal is seventeen-year-old C.B.

The parties' marriage was dissolved in July 2014. Their marriage and the dissolution proceedings were contentious, but the parties continued to reside in close proximity to each other and shared joint custody of the children. Shortly after the parties were divorced, Father obtained employment in New Mexico. In December 2014, the parties agreed to a temporary custody arrangement awarding Father sole legal and physical custody of C.B., who was thirteen years old, and her brother, who was fourteen years old.[1]

During the divorce proceedings, and the ensuing custody and parenting time modification proceedings, the trial court appointed a guardian *ad litem* ("GAL") for the children. The children told the GAL that Mother was physically and emotionally abusive. The children also reported that Mother's home was not clean and smelled strongly of cat and dog urine. Mother denied abusing or harming the children.

---

[1] Mother was awarded sole legal and physical custody of the parties' sixteen-year-old daughter.

[6]     In June 2015, the GAL concluded that Mother and the children had significant problems in their relationship, that Mother blamed Father and the children for the issues between Mother and the children, and Mother refused to acknowledge any responsibility in the damaged relationship with her children. On June 29, 2015, the parties agreed that Father would have sole legal and physical custody of the minor children in New Mexico, subject to Mother's parenting time. The parties agreed that Mother would have seven weeks of parenting time in the summer, spring break, and one half of the children's winter break.

[7]     Over the next few years, Mother's relationship with the children continued to deteriorate. When C.B.'s sister and brother turned eighteen, they refused to have any contact with Mother. Mother continued to place blame for her troubled relationship with the children on Father.

[8]     C.B. continues to receive individual therapy in New Mexico, as well as in Indiana while she is in the state for parenting time with Mother. C.B. suffers from anxiety and depression. C.B. exhibits increased symptoms of anxiety before she returns to Indiana for parenting time with Mother. C.B.'s therapist in New Mexico believes that C.B. suffers from post-traumatic stress disorder as a result of Mother's abuse over the years.

[9]     C.B. was particularly anxious about returning to Indiana for parenting time with Mother by herself after her brother turned eighteen. C.B.'s therapist

concluded that C.B. is emotionally vulnerable, and C.B. expressed that any contact with her mother was "very distressing." Tr. Vol. II, p. 45.

[10] On February 2, 2017, Father filed a petition to modify parenting time. The court ordered both parties to undergo psychological evaluations, and the GAL was re-appointed. As a result of Mother's psychological evaluation, she was diagnosed with personality disorder with mixed personality problems including histrionic, narcissistic, borderline, and compulsive personality traits. Appellant's App. Vol. III, p. 87.

[11] Mother and C.B. began participating in reunification therapy in 2017, which was recommended by the GAL. C.B. has expressed that she does not trust Mother and does not want a relationship with her. In April 2018, the GAL issued another report recounting C.B.'s opinion that reunification therapy was not helpful. C.B. continued to report stress, anxiety, depression and insomnia as a result of contact and therapy with Mother. C.B.'s grades in school also declined.

[12] Hearings were held on December 1, 2017, April 20, 2018, and May 25, 2018. The GAL also filed her final report on May 14, 2018. The GAL concluded that Mother and C.B.'s relationship continues to be "deeply fractured." Appellee's App. Vol. II, p. 100. C.B. did not have any interest in continuing with reunification therapy. C.B. reported that reunification therapy causes her significant stress, anxiety, and depression. C.B. also told the GAL that she has suicidal thoughts. She also expressed frustration that Father is encouraging her

to continue with reunification therapy. *Id.* at 100–01. Due to stress and depression, C.B.'s grades dropped significantly, and she does not want to spend time with friends. The GAL expressed significant concern over C.B.'s emotional well-being. *Id.* at 103.

[13] On June 5, 2018, the trial court issued its order adjudicating the parties' pending motions concerning parenting time. The trial court found that the "previously agreed upon" parenting time schedule "presents a significant threat to" C.B.'s mental health, and therefore, "there is a substantial and continuing change in circumstances that warrants a modification of" Mother's parenting time. Appellant's App. Vol. II, p. 31. The court modified Mother's parenting time ordering that "[s]upervised parenting time shall only occur in a therapeutic setting through reunification therapy or may be done in person through a different reunification therapist in New Mexico." *Id.* The court also determined that Mother could exercise additional parenting time by agreement of the parties. Mother now appeals.

# Discussion and Decision

[14] In all parenting time controversies, courts must give foremost consideration to the best interests of the child. *In re Paternity of C.H.*, 936 N.E.2d 1270, 1273 (Ind. Ct. App. 2010), *trans. denied*. We review a trial court's parenting time decision for an abuse of discretion. *Hatmaker v. Hatmaker*, 998 N.E.2d 758, 761 (Ind. Ct. App. 2013). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the

court or if the court misinterpreted the law. *Id*. "If there is a rational basis for the trial court's determination, then no abuse of discretion will be found." *In re Paternity of C.H.*, 936 N.E.2d at 1273.

[15] Mother argues that "for all practical purposes" the trial court entered "an order denying Mother parenting time" because her financial circumstances make it impossible for her to travel to New Mexico for supervised parenting time.[2] Appellant's Br. at 6. Mother also argues that the parenting time restriction is not supported by the evidence.[3]

[16] "A parent not granted custody of the child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development." Ind. Code § 31-17-4-1(a). "Even though the statute uses the word 'might,' this Court has previously interpreted the language to mean that a court may not restrict parenting time unless that parenting time 'would' endanger the child's physical health or emotional

---

[2] Concerning Mother's economic argument, we observe that the right of parenting time is subordinated to the best interests of the child. *Lasater v. Lasater*, 809 N.E.2d 380, 401 (Ind. Ct. App. 2004). "Accordingly, if unsupervised parenting time would pose a danger to a child, the parent is not entitled to dispense with supervision because of the costs associated with supervisory programs." *Hatmaker v. Hatmaker*, 998 N.E.2d 758, 762 (Ind. Ct. App. 2013). Mother would have to incur significant expense to participate in in-person reunification therapy in New Mexico with C.B. But the trial court's order also permits reunification therapy via phone or other electronic means.

[3] Mother also argues that the trial court erred when it ordered that she could "exercise parenting time by agreement of the parties." In support of her argument she relies on *Hatmaker*, but in that case, the trial court did not make the requisite finding of endangerment to support the restriction of the Father's parenting time. *See* 998 N.E.2d at 762. In the event that reunification therapy between Mother and C.B. is successful, we encourage Father to agree to allow Mother additional parenting time.

development[, and] an order for supervision constitutes such a restriction." *Hatmaker*, 998 N.E.2d at 761.

[17] Indiana Code section 31-17-4-2 allows a trial court to modify a parenting time order "whenever modification would serve the best interests of the child." But

> [e]xtraordinary circumstances must exist to deny parenting time to a parent, which necessarily denies the same to the child. If the trial court finds such extraordinary circumstances do exist, then the trial court shall make specific findings regarding its conclusion that parenting time would endanger the child's physical health or significantly impair the child's emotional development.

*Perkinson v. Perkinson*, 989 N.E.2d 758, 765 (Ind. 2013).

[18] C.B. and Mother's relationship is "deeply fractured." Appellee's App. Vol. II, p. 100. C.B.'s therapists testified that C.B. suffers from stress, anxiety and depression. C.B. is emotionally vulnerable and is likely suffering from post-traumatic stress disorder. Tr. Vol. II, pp. 38–39. Although Mother now accepts some responsibility for her troubled relationship with C.B., she continues to place significant blame on Father even though Father has encouraged C.B. to maintain a relationship with Mother.

[19] After hearing the evidence, the trial court commented:

> [T]he relationship has broken down, death by a thousand paper cuts. Little things over the years that have added up and added up to a complete loss of trust and a complete and utter breakdown of the parent-child relationship. . . .

> In the Court's assessment of what has happened thus far, and what has happened specifically in the last six to eight months, it is that the situation continues to get worse and that attempts to fix this part or that part of the relationship, nothing has improved it. And even when there is perhaps a good day, . . . [o]verall the situation does not improve and continues to get worse. And now we are in a situation where the child has expressed suicidal thoughts as an alternative to participating in parenting time.

Tr. Vol. IV, p. 48.

[20] In support of her argument, Mother cites to cases where our court has addressed the lack of sufficient evidence to support a restriction on parenting time.[4] And Mother appropriately observes that "our parenting time statute does not provide for the elimination of parenting time because reunification counseling has proved unusually challenging[.]" *See D. B. v. M.B.V.*, 913 N.E.2d 1271, 1275 (Ind. Ct. App. 2009).

[21] But each case must be evaluated on its own unique and particular facts. In this case, the evidence supports the trial court's findings that C.B.'s emotional health is endangered by continued unsupervised parenting time with Mother. For all of these reasons, we conclude that the evidence supports the trial court's

---

[4] *See In re Paternity of W.C.*, 952 N.E.2d 810 (Ind. Ct. App. 2011) (concluding that although Mother needed to improve her parenting skills for her special needs child, the record did not support terminating Mother's parenting time); *D.B. v. M.B.V.*, 913 N.E.2d 1271 (Ind. Ct. App. 2009) (reversing the order terminating Father's parenting time where there was no specific finding that parenting time would cause harm to the children).

order restricting Mother's parenting time to supervised time during reunification therapy.

[22] Affirmed.

Vaidik, C.J., and Crone, J., concur.